[No. 32958. Department Two. April 1, 1955.]
(Petition for rehearing granted July 1, 1955.)

HARRIETTE M. RAAB et al., *Respondents*, v. CLARENCE W.
WALLERICH, *Individually and as Executor, et al.,*
*Appellants.*[1]

[1]Reported in 282 P. (2d) 271.

*Eisenhower, Hunter, Ramsdell & Duncan,* for appellants.

*Kahin, Carmody & Horswill* and *Henry C. Perkins,* for respondents.

MALLERY, J.—The judgment herein decrees specific performance of a written contract between Peter Wallerich and Maude Wallerich, executed shortly after their marriage in 1906 and subsequently lost, in which they agreed to consider their separate property as community property and to execute wills so written that, if they had children, it and all subsequently acquired property would descend in equal shares to Clarence W. Wallerich, a son of Peter Wallerich by a prior marriage, and to the children, if any, of the parties.

The defendants appeal and assign error to the trial court's findings of fact Nos. 2, 3, 4, 5, 6, 7, and 8, and to the conclusions of law upon which the decree is based. They also assign error to the trial court's failure to enter their proposed findings of fact and conclusions of law.

We hold that the record supports the trial court's findings of fact. We set them out as a statement of the facts in the case, italicizing the parts objected to by appellants.

"I. Peter Wallerich, now deceased, died in Pierce County, Washington, leaving estate therein, on or about the 31st day of October, 1951; that thereafter his estate was admitted to probate in Cause No. 53335 in Pierce County Probate Department, and that the Defendant Clarence W. Wallerich is the executor under the Will admitted to probate, appointed by virtue of the ·Will admitted to probate in said cause; that the Defendants are all residents of Pierce County, Washington; that the Defendant Peter Kenneth Wallerich is a son of Clarence W. Wallerich and is granted the remainder interest after a life estate granted to Maude Wallerich in certain real property owned by the deceased.

"II. Peter Wallerich, the deceased, and Maude Wallerich were married in the State of Washington in the year 1906 and shortly thereafter, and during the year 1906, it was agreed in writing by and between the deceased and Maude Wallerich that they would pool their property and consider it all as community property, the deceased then being worth several thousands of dollars and the wife having two or three hundred dollars in cash; *it was further agreed in writing that they would execute Wills so written that the combined estates of the two parties should descend in equal shares to Clarence W. Wallerich, a son of the deceased by a prior marriage, and to any offspring of the marriage between Maude and Peter Wallerich, and that in the event there were no offspring of this marriage the wife would share equally in Peter's estate with the son Clarence; that said agreement was supported by the mutual promises of each to make such a Will and by the pooling of their assets and by the making of Wills consistent with the said agreement*; that subsequently the parties to the agreement had born to them two children, Harriette and Sally, who are the Plaintiffs in this cause; *that implementing said agreement at the time the daughter Harriette was born new Wills were executed leaving the property equally to Clarence and Harriette; that when Sally was born, implementing the agreement, the parties agreed to make and made Wills by the terms of which two-thirds of the deceased's estate was left to the son Clarence and one-sixth to each of the daughters and the wife, Maude, left her estate in equal shares to the daughters so that ultimately each child would have one-third of the combined estates; that thereafter from time to time and up until the year 1951 the parties made various Wills to the same effect implementing the basic agreement.*

"III. *Relying upon the said agreement, the wife contributed the cash she had to the common fund, raised*

*Clarence as a member of the family, made Wills conforming to the agreement up to the time of the trial of this cause, continued the marriage, and cooperated with her husband in the making of gifts to the children which were equal as to each of them so that the children would in fact, by gift as well as devise, share equally in the combined estates.*

"IV. Clarence W. Wallerich, after he grew up, became associated with his father in the North Pacific Bank which was owned by his father; other companies, including some automobile firms, were bought with funds of Peter and Maude Wallerich and the son Clarence worked hard and helped develop the said businesses *but was at all times amply paid for his efforts, his salary being as high at times as forty thousand dollars ($40,000) annually, and the businesses were acquired by the use of the capital of Peter and Maude Wallerich.*

"V. By the year 1942 the deceased and his wife had accumulated very substantial properties; in that year, due to a change in federal estate tax liabilities, the deceased and his wife, by agreement, divided their community estates between the two of them into the separate property of each *as equally as was practical for tax purposes; at the same time both he and his wife made extensive gifts to all three of the children and some gifts to grandchildren, being meticulously careful that each child and his or her family should receive no more than any one of the other two children; at the same time in 1942 the deceased, by an affidavit signed by both himself and his wife, dated December 15th, again recited the basic agreement of 1906 and again agreed with her that Wills be made as they had been made before so that the children would share equally in their combined estates and, consistent with said affirmation of the original agreement, made Wills in 1942 leaving the estates in the same way as had been the practice since the birth of the last daughter, Sally; that the Defendant Clarence W. Wallerich, late in 1942 or early 1943, actually saw and knew the terms of the 1942 affidavit and at that time and prior thereto knew of the basic agreement of 1906; that the agreement had been a subject of common family discussion with all of the members of the Wallerich family and their respective spouses over the years; that after 1942 and until the date of the Will now admitted to probate the deceased had consistently made Wills conforming to the aforesaid agreement; that the Defendant Clarence W. Wallerich and the Plaintiffs received numerous communications orally and by letter from the deceased explaining the basic plan of equal distribution to*

*the children, how the gifts conformed therewith, and how gifts made in 1942 and after conformed with the equal distribution of the combined estates among the three children.*

"VI. *In the year 1950 the Defendant Clarence W. Wallerich determined that he would by almost any means take over the family's business and get his sisters' and his mother's and possibly his father's stock in the various companies so that they would no longer have any management in the various businesses and would have no income from the same and that he would be the sole owner thereof; that pursuant to this determination on his part he threatened that he would leave them and take the automobile franchises, which were in his name, and set up new businesses if they would not sell their interests to him*; meanwhile, Peter Wallerich was ill and confined in the hospital from shortly after Thanksgiving, 1950, until late February, 1951; the sisters and mother objected to losing their interest in the businesses and demanded that if they did sell they be paid a premium over book value of the various businesses; *the amount of one hundred seventy-five thousand dollars ($175,000) was settled between the parties as the premium over book value for the sale; that this was a business transaction entered into at arms' length between the parties but the total purchase price paid was considerably less than the actual value of the interests purchased by Clarence W. Wallerich in such businesses*; that ultimately, in March, 1951, the sale was consummated and the sisters and Maude Wallerich sold all of their interests to Clarence W. Wallerich.

"VII. While the negotiations for the sale were going on Clarence W. Wallerich was in *constant* touch with his father and, *unknown to the Plaintiffs or Maude Wallerich*, obtained an agreement from his father, while his father was in the hospital, that if he bought the sisters' and the mother's share Peter Wallerich would leave all of his estate to him, *which was completely contrary to the contract of 1906*; this latter agreement was reduced to writing, and pursuant to the same the Will now offered for probate was executed; that neither Clarence nor Peter Wallerich ever disclosed to the Plaintiffs or to Maude Wallerich the existence of such agreement; *that Clarence W. Wallerich, as a part of the sale transaction, attempted, without revealing the existence of his contract with the deceased, to have the daughters sign waivers of their right of inheritance from their father, which the daughters refused to do, relying upon the earlier contract and being unaware of the later contract.*

"VIII. *By making the later contract and the Will now in*

*probate, the decedent breached the earlier contract which was at all times in full force and effect."* (Italics ours.)

Appellants argue their assignments of error under five headings, four of which are stated in the form of questions. The most important one is:

"I. Have the Respondents proved by legally admissible evidence to the extent required by law that Peter and Maude Wallerich made a binding and enforceable contract to will their property for a good and valuable consideration?"

Appellants contend that exhibit No. 1 was inadmissible. It was an affidavit executed by both Peter and Maude Wallerich on December 15, 1942, and stated the following, *inter alia*:

"That they were married July 4th, 1906, in Spokane, Washington. That for a wedding present, Peter Wallerich gave his bride, a written agreement, the phraseology thereof constituting an Assignment, by which he was giving her one half (½) of all the property he then owned; making it community property as if they had earned it as husband and wife. Peter Wallerich further agreed, promised to make, and did make a Will, repeating that agreement, and that should he pass away, his wife should receive that promised one half (½), but that the other half (½), should become the property of his then 9 year old son Clarence, who was living with his Uncle and Aunt at all times after his mother had passed away in 1900, until 1912, when he came to live with the affiants. And it was further agreed, that, should his son receive any legacy from his deceased mother's estate, that such inheritance should at all times be kept separate and not be mingled with the community property of the Affiants.

" (That the Affiants at all times paid the Uncle and Aunt for the care for him, as also all his school expenses and medical care.)

"That however, if and when, they have children of their own, all children, including the son, should share equally, share and share alike, in the community estate of the Affiants.

"That at all times to the date of this affidavit, the Affiants have had, and positively expressed that desire in every Last Will and Testament they made."

Appellants contend that respondents' exhibit No. 1 was wrongfully admitted in evidence for the reason that it was made for tax purposes only, not to settle property rights between the parties, and, hence, its contents are not admissions against interest but are self-serving declarations instead.

Exhibit No. 1 sets out the essential terms of the lost contract of 1906, which respondents were trying to prove. It was admissible for that purpose. It may very well have been a self-serving declaration as to the taxing agency, which is not a party to this action, but, as between the parties, its clear statement of their property rights was an admission against interest and, therefore, admissible.

Appellants contend that Maude Wallerich, the surviving spouse of Peter Wallerich, was barred from testifying under RCW 5.60.030 [cf. Rem. Rev. Stat., § 1211], which provides:

". . . in an action or proceeding where the adverse party sues or defends as executor . . . of any deceased person, or as deriving right or title by, through, or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify *in his own behalf* as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased . . ." (Italics ours.)

The decree from which appellants appeal provides, in essence, that

"IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Clarence W. Wallerich, as Executor of the Estate of Peter Wallerich, deceased, in the Superior Court of the State of Washington, in and for the County of Pierce, in Probate Cause No. 53335, as soon as said estate can be expeditiously closed and the tax liabilities disposed of, distribute in equal shares to Harriette M. Raab and Sally R. Dillard one-third of the net estate of Peter Wallerich, deceased, in the same manner as if each of them had been named in such Will to receive such proportional interests, and execute to said parties sufficient Bills of Sale and documents distributing said property to them as expeditiously as is possible in the administration of the said estate."

It thus appears that, while Maude Wallerich was a party to the action, she was not a party in interest as the

issues thereof were framed, and she, therefore, did not testify in her own behalf. This is apparent because the decree did not purport to determine any of her rights or bind her in any manner. Her testimony was admissible. See *Sackman v. Thomas*, 24 Wash. 660, 64 Pac. 819, *O'Toole v. Faulkner*, 34 Wash. 371, 75 Pac. 975, *Denny v. Schwabacher*, 54 Wash. 689, 104 Pac. 137, *Showalter v. Spangle*, 93 Wash. 326, 160 Pac. 1042, *Meyer v. Campion*, 120 Wash. 457, 207 Pac. 670.

▇ Appellants contend that there was no valid consideration for the contract at the time it was entered into. Mutual promises to devise by will are sufficient consideration to sustain such a contract. *In re Edwall's Estate*, 75 Wash. 391, 134 Pac. 1041, *Auger v. Shideler*, 23 Wn. (2d) 505, 161 P. (2d) 200. As to the consideration, Maude Wallerich testified, in particular, as follows:

"Q. Now, as far as the written contract was concerned, can you give us the basic terms of that written contract? A. It was—the property was to be community property; I was to have—it was to be half-and-half, community property. . . . Q. What property were you referring to, that was to be community property? A. All the property that he then had. Q. What about your property? A. Well, the two or three hundred dollars is all I had. Q. Well, was that— A. (Interposing) That was to be considered, too. Q. All right, what else was in the agreement? A. We were to make wills; he was to make a will. . . . THE COURT: Can you state just what the contract said, or as closely as possible? A. He promised to make a will; I promised to make a will. . . . A. (continuing) And also our children. All of the children, if and when we would have children, were to share equally with the son—the nine-year-old son—in the entire community estate. Q. And what was the situation as far as any provision that was made in those wills for you, prior to the time that you should have children? A. I was to have the half for myself. Q. All right; and you say that was signed by both of you, is that correct? A. Yes. Q. Now, how did you subsequently make wills in accordance with that contract? . . . Q. Did you subsequently make wills? A. We did."

We hold there was sufficient consideration.

▇ Appellants contend that the trial court erred in

denying their motion to make the complaint more definite and certain or for a bill of particulars, and in refusing to strike the bill of particulars which was submitted. Such motion was addressed to the sound discretion of the trial court and, in the absence of a specific showing of prejudice, will not be reviewed by this court. No prejudice is specifically pointed out, and we, accordingly, hold it was not reversible error. See *Berg v. Humptulips Boom & River Imp. Co.*, 38 Wash. 342, 80 Pac. 528, *Just v. Littlefield,* 87 Wash. 299, 151 Pac. 780, RCW 4.32.240 [*cf.* Rem Rev. Stat., § 303].

█ Appellants contend that if a contract in writing was proved, it was not shown to have been notarized and was, therefore, void under RCW 26.16.120 [*cf.* Rem. Rev. Stat., § 6894].

We find no merit in the assignment. The statute, in question, applies to community property agreements which vest title in the survivor after the death of one spouse. The instant contract did not purport to do this. It was intended to be a mutual agreement to devise to third parties by will, and to be effective, as such, from the date of its execution in 1906. Such a contract need not be notarized. See *In re Ivers' Estate,* 4 Wn. (2d) 477, 104 P. (2d) 467.

Appellants contend that equities in favor of Clarence Wallerich warrant the court in sustaining the will, regardless of the 1906 contract.

The theory of this assignment of error is that the services of Clarence Wallerich over a long period of time, in the management of the business enterprises of Peter and Maude Wallerich, entitled him to recompense which outweighs the contractual rights of the third-party beneficiaries.

We do not find any merit in this assignment of error, either in law or in fact, since it appears that Clarence Wallerich was paid an adequate salary through all the years of his service in the enterprises.

█ Appellants contend that the other evidence in the case does not substantiate the existence of the agreement in question. We need not reach or discuss this assignment of error for the reason that the contract is adequately estab-

lished, both as to certainty of its terms and as to its execution by exhibit No. 1 plus the testimony of Maude Wallerich. It is immaterial that Peter and Maude Wallerich made large gifts to the three children in harmony with the division of property agreed upon in the contract. This can be explained as being in accord with the independent testamentary desires of the parties. However, the gifts do not negative the existence of the contract and are consistent with it. We hold the proof was sufficient without the evidence of the gifts.

Appellants contend that the contract was mutually rescinded by exhibit "B," an agreement dated December 28, 1942, between Peter and Maude Wallerich, which divided the community property into equal amounts of separate property. It must be at once stated that this modified the contract of 1906 to the extent that it contemplated that the parties' community property would be considered as separate property as between themselves. It did not, however, purport to abrogate the provisions of the 1906 contract to devise all of the properties of the parties equally among the heirs.

The trial court's finding of fact No. 5, heretofore set out, explains and interprets this fact to our satisfaction, and we adhere to it.

The judgment is affirmed.

HAMLEY, C. J., HILL, FINLEY, and WEAVER, JJ., concur.

July 1, 1955. Petition for rehearing granted.