[No. 39926. Department Two. February 1, 1968.]

THE STATE OF WASHINGTON, *Appellant*, v. VIKTOR SCHIMSCHAL, *Respondent.*\*

\*Reported in 437 P.2d 169.

*The Attorney General, Robert M. McDonald, Assistant, Nathan G. Richardson,* and *Paul E. Froude,* for appellant.

HILL, J.—This is a filiation proceeding. There was a jury verdict in favor of the defendant, and from a judgment dismissing the action this appeal is taken. The defendant (the respondent here) has filed no brief and made no appearance in this court.

The complaining witness, Elaine Conklin Vernon, was married to Lloyd Ed Conklin July 19, 1957. Three children were born of this marriage. Mr. and Mrs. Conklin separated in 1964; he took one child with him and went to California. Mrs. Conklin kept the other two children and moved to Sequim in the summer of 1964. She secured a divorce from Mr. Conklin May 4, 1965. The child whose paternity is here in question was born November 22, 1965. This proceeding was commenced May 9, 1966, while the complaining witness was unmarried.

There was testimony that a Mr. H. was having sexual relations with the mother in January and February in 1965, as was the defendant, and that there also had been a Mr. K. in January, 1965.

It is clear that the husband, Mr. Conklin, and Messrs. H. and K.—to use the language of the appellant's brief—must be "painted out of the picture." To "paint out" the husband and Messrs. H. and K., the state made the following offer of proof:

Our offer of proof will be that she [the complaining witness] would testify that she has not seen her husband [Mr. Conklin] since she left him in March 1964 in Everett, Washington; that she has had no intercourse with him since that time; that during January, February and March of 1965 she had many, many acts of intercourse with Viktor Schimschal, the defendant herein; that she had her last menstrual period in February, 1965; that it was subsequent to this time that she became pregnant. She will also testify she had intercourse with no one except this defendant after her last menstrual period until such time as she knew she was pregnant.

The trial court sustained an objection to the proffered testimony.

The trial court took the position that the mother should not be permitted to bastardize her child, conceived during coverture. Its statement was:

> The supreme court seems to have gone along this line to eliminate the Mansfield Rule and to make it possible for a woman to testify that a child is not legitimate, but I don't think it is a just and fair rule. I am going to hold what I think is right, no matter what some courts have held, and hold with the courts that say this woman can't take the stand and say this baby who is innocent and helpless, is illegitimate, for some purpose.

■ However admirable the position taken, it is contrary to our holding in *In re a Minor*, 29 Wn.2d 759, 762, 189 P.2d 458 (1948), where we said:

> The fact of the child's illegitimacy was established by other evidence, hence the mother's testimony was not necessary for determination of the question of illegitimacy. For guidance, however, in future similar cases, we announce the rule that the mother was competent to testify to the illegitimacy of the child in question, which was born to the mother during wedlock.
>
> The "Lord Mansfield rule," (*Goodright v. Moss*, 2 Cowp. 591, 98 Eng. Reprint 1257, decided May 1, 1777) that a parent is not competent to testify to the nonaccess of his spouse, where the effect of such testimony would be to bastardize a child born during coverture, was followed by some of the earlier decisions but has long since been rejected by the courts.
>
> Our statute (Rem. Rev. Stat., § 1210 [P.P.C. § 38-1]) provides that
>
> "Every person of sound mind and suitable age and discretion, except as hereinafter provided, may be a witness in any action or proceeding."

We later in the same opinion quote *State v. Soyka*, 181 Minn. 533, 233 N.W. 300, on the "Lord Mansfield rule":

> "Dean Wigmore has made a very destructive analysis of the 'dogmatic' pronouncements of the English rule. He refers to the decencies and moralities invoked in its support as 'mere pharisaical afterthoughts, invented to explain an otherwise incomprehensible rule, and having no support in the established facts and policies of our law. There never was any true precedent for the rule,'

he continues, 'and there is just as little reason of policy to maintain it.' 4 Wigmore, Ev. (2 ed.) §§ 2063, 2064. . . ." (p. 763)

See also *Moore v. Smith*, 178 Miss. 383, 172 So. 317 (1937); *Lynch v. Rosenberger*, 121 Kan. 601, 249 Pac. 682, 60 A.L.R. 376 (1926); *In re Wray's Estate*, 93 Mont. 525, 19 P.2d 1051 (1933); *Loudon v. Loudon*, 114 N. J. Eq. 242, 168 Atl. 840, 89 A.L.R. 904 (1933).

■ The evidence excluded by the trial court should have been admitted. This is a civil action; *State v. Kratzer*, 70 Wn.2d 566, 424 P.2d 316 (1967). It is for the benefit of the child; and, if the defendant is the father, he should bear some responsibility for her maintenance, care, education and support; RCW 26.24.030. The exclusion, however, was not particularly prejudicial to the state's case insofar as its attempt to "paint out" Mr. Conklin was concerned, since Elaine Conklin Vernon did testify that she had not seen her former husband since he left for California in 1964; so, if the jury believed her, Conklin was eliminated as a possible father of her child.

Her testimony was, however, vital if Messrs. H. and K., or another possibility suggested by the defense, were each to be eliminated as a putative father of the child. The jury might or might not have believed her testimony but it should have had the opportunity of hearing it and evaluating it.

■ The state also urges that its following proposed instruction should have been given:

While the normal period of gestation of 260 to 265 days may be exceeded, the extreme limit of a period of gestation is 334 days.

Testimony to that effect might well be admissible, and it could be given as an instruction if the trial court desired to do so. We find no case holding that it is prejudicial error to fail to give such an instruction.

For the exclusion of the testimony of Elaine Conklin Vernon, as set forth in the state's offer of proof, the judgment of dismissal is set aside and a new trial is granted.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and EVANS, J. Pro Tem., concur.