[No. 14715-3-I. Division One. November 24, 1986.]

THE STATE OF WASHINGTON, *on the Relation of Helen F. Coyle–Reite, Appellant,* v. KENNETH A. REITE, *Respondent.*

8

*Norm Maleng, Prosecuting Attorney,* and *David S. Orr, Deputy,* for appellant.

*Ralph W. Moldauer,* for respondent.

GROSSE, J.—This was an action brought by the State of Washington to establish paternity and for child support. The trial court denied the relief requested. The State appeals.

The trial court's findings of fact insofar as pertinent to this appeal are as follows:

2. The minor child Helen Coyle–Reite was born to Katherine Victoria Coyle on July 5, 1979.

. . .

4. The results of blood tests performed by the Baltimore R.H. Laboratory indicate a 98.4 percent plausibility of paternity on the basis of test results performed on the minor child, mother and Respondent Kenneth A. Reite.

. . .

6. The Respondent's testimony indicates that he has always lived in the Bellevue–Redmond area from the time of meeting the mother at the Juanita Tavern. In addition, Respondent's parents are listed in the Bellevue phone book, and have lived at the same address for the past thirty (30) years.

7. The mother has testified that she never contacted the Respondent upon finding out she was pregnant, delivering the child or until approximately April of 1983 when she reached the Respondent at his place of employment and arranged an appointment to meet with him. The purpose of that meeting was to warn the Respondent that the State of Washington would be look-

ing to him for child support for her child, and to ask him for written permission to allow her to remove the child from the State of Washington.

. . .

9. The mother never asked the Respondent for any support including medical expenses relating to the pregnancy or birth of the child. These expenses presumably were paid for by the [mother's] mother and father.

10. Upon application to the Department for receipt of Public Assistance, the mother complied with requirements that she name the father of the child, and named the Respondent as the father of her child.

11. The Department of Social and Health Services did not contact the Respondent or search for the Respondent until the mother contacted them with information as to his address and employer in approximately December of 1982.

12. The mother's testimony that she did not have sexual relations with anyone other than Respondent for a period of over one and one-half months prior to relations with the Respondent, when considering a time period over four years ago, leaves some question in the Court's mind as to identifying evidence after such a lengthy period has elapsed.

13. The blood test result indicating "very likely" is not the highest result possible for these blood test results. This Court has seen higher results in previous tests, and notes that the term "very likely" is the third term in verbal predicates used to identify the usefulness of blood test results in establishing paternity.

14. Based on the evidence presented, which includes the blood test results performed on the parties the testimony of the parties considered at trial, and the credibility of the witnesses, this Court concludes that the Respondent, Kenneth A. Reite, is not the biological father of Helen F. Coyle–Reite.

The trial court determined that the State had failed to establish that the respondent was the father of the child by a preponderance of the evidence. The evidence introduced by the State consisted of the testimony of the mother with regard to the details of her relationship with the respondent, and the blood test results. The respondent's evidence consisted solely of his testimony. The respondent admitted

having sexual relations with the mother during the critical period but denied any knowledge of her pregnancy and of the child.

The principal reason for the trial court's finding against paternity appears to be its challenge to Coyle's credibility regarding a lack of sexual relations with anyone other than respondent for 6 weeks prior to her relationship with him. However, no basis is given for this challenge other than the 4-year interlude between the period in question and the trial. Coyle never wavered from her testimony, nor could respondent's counsel raise doubts by his cross examination. The closest he came was in establishing that she had had sexual relations with another man some 6 months prior to her encounters with respondent. That evidence is irrelevant since it does not permit an inference that Coyle had sexual relations with a man other than respondent during the conception period for this child. *See State v. Rook*, 10 Wn. App. 484, 489–92, 519 P.2d 252 (1974) (reversing the jury verdict of no paternity in part because of prejudicial admission of evidence of the mother's prior illegitimate child).

The uncontradicted evidence before the court was that the parties had the requisite sexual contact during the time when conception would have occurred, considering the child's full term gestation and delivery date. The blood tests administered by stipulation of the parties did not exclude respondent as the natural father. In fact, they affirmatively indicated that it was "very likely" that he was the father based on a "probability" of 98.490 percent.

Blood tests are normally used as an exclusionary test and may be required for that purpose under the governing statute. RCW 26.26.100. The Human Leukocyte Antigen (HLA) blood tests used here have been cited by our Supreme Court as being a reliable indicator of parentage. *State v. Meacham*, 93 Wn.2d 735, 737, 612 P.2d 795 (1980). There is currently some debate as to what extent such tests may affirmatively establish paternity, *see State v. James*, 38 Wn. App. 264, 271 n.3, 686 P.2d 1097 (1984), but little

dispute that they can establish at minimum the probability of paternity. *James,* at 271.[1]

The unchallenged law of the case is that the burden of establishing respondent's paternity is by a preponderance of the evidence. Although the trial court questioned Coyle's testimony in finding 12, it did not specifically find her uncredible. The oral opinion is not helpful in its lack of elaboration on this point, nor does it provide any other rationale or basis for failing to find paternity other than an abhorrence to requiring respondent to repay the State the amount of support provided given 4 years of inaction.

 We find no evidence in the record which supports finding 14. Technically this is sufficient to sustain the paternity claim here. Respondent did not move for a directed verdict or dismissal at the closing of the State's case, or at the end of the case on grounds the evidence was not sufficient. In effect this conceded that a prima facie case was established, thus shifting the burden to respondent to present positive evidence to the contrary. This he did not do; his mere denials are insufficient to cast doubt on the claim. *See State v. Ferguson,* 157 Wash. 19, 22–24, 288 P. 239 (1930); *State v. Hall,* 74 Wn.2d 726, 728, 446 P.2d 323 (1968). *See also Little v. Streater,* 452 U.S. 1, 10–12, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (1981) (Connecticut law).

 A finding which ignores uncontradicted evidence is not binding on an appellate court, which may then proceed to make a finding based on uncontroverted or undisputed evidence before it. *Chmela v. Department of Motor Vehicles,* 88 Wn.2d 385, 391, 561 P.2d 1085 (1977); *Heriot v. Smith,* 35 Wn. App. 496, 501–02, 668 P.2d 589 (1983). Here

---

[1]The South Carolina Court of Appeals held that the HLA blood tests may be admitted as evidence tending to prove paternity, though they are not dispositive of the issue. *See Department of Social Servs. v. Bacot,* 280 S.C. 485, 313 S.E.2d 45, 47 (Ct. App. 1984). We note the HLA tests are the subject of controversy, both on substantive grounds, *see Angela B. v. Glenn D.,* 126 Misc. 2d 646, 482 N.Y.S.2d 971, 974–78 (Fam. Ct. 1984), and on interpretative grounds, *see Juliana C. v. Louis T.,* 126 Misc. 2d 731, 483 N.Y.S.2d 920, 921–26 (Fam. Ct. 1984).

12

there is uncontradicted testimony by Coyle and respondent to the requisite sexual contact during the appropriate time period, as well as the testimony of Coyle as to the lack of other partners during this period. Also before the court is the blood test which indicates that it is "highly likely" that respondent is the natural father.

> By "undisputed" fact we mean a fact disclosed in the record or pleadings that the party against whom the fact is to operate either has admitted or has conceded to be undisputed.

*Heriot,* at 502. There is no dispute in this case as to the requisite sexual contact; nor any dispute as to the blood test results; nor any dispute in the evidence as to Coyle's sexual contact only with respondent for the 6 weeks prior to the conception date. The claim of paternity is thus supported by admissions and undisputed facts.

We therefore find that the respondent herein is the natural father of Helen F. Coyle–Reite. The judgment and dismissal are reversed. The case is remanded for entry of a finding of paternity against respondent, and hearings on the related child support issues. We note that the defense of laches or estoppel, inapplicable in a paternity action such as this, RCW 26.26.060(1)(a); *In re Burley,* 33 Wn. App. 629, 636–37, 658 P.2d 8 (1983) (dictum), may provide a proper defense to the State's claim for reimbursement or provide a basis for the trial court to grant equitable credits for the payments, *see In re Marriage of Oliver,* 43 Wn. App. 423, 426, 717 P.2d 316 (1986), and cases cited therein.

SCHOLFIELD, C.J., and WEBSTER, J., concur.