[No. 26141-0-I. Division One. January 22, 1991.]

MURIEL PATRICIA RABB, ET AL, *Respondents,* v. THE ESTATE .OF JERRY M. MCDERMOTT, ET AL, *Appellants.*

*Hans Johnsen* and *Johnsen & Oliver,* for appellants.

*Kathleen Field* and *Royce Ferguson,* for respondents.

SCHOLFIELD, J.—Evangeline McDermott, personal representative of the estate of her son, Jerry McDermott, appeals the trial court's determination that David James Rabb is the son of Jerry McDermott. We affirm.

## FACTS

On April 18, 1988, Muriel Patricia Rabb, on behalf of her minor son, David James Rabb, born July 7, 1985, brought this action for determination of paternity against the estate of Jerry M. McDermott, and Evangeline McDermott as the

estate's personal representative. McDermott died in an automobile accident on July 30, 1987.

The trial court's findings of fact indicated that Rabb and McDermott met in September 1981 and lived together in McDermott's home from December 1981 until late in 1983 or early in 1984. At the time McDermott had custody of his two sons from a prior marriage—Trevor, born in 1975, and Damian, born in 1977.

While McDermott and Rabb lived together, they appeared to carry on a normal intimate relationship, and testimony was presented by individuals who had seen them sleeping in the same bed. Rabb testified that McDermott was concerned about her drug and alcohol problem and that this was one of the reasons the two separated and did not marry.

Rabb testified that after their separation, she and McDermott continued to see each other. Holiday cards signed by McDermott were introduced into evidence to show a continuing relationship. Rabb testified that she and McDermott had sexual intercourse on a number of occasions after they separated, and specifically that they had sexual intercourse in October 1984, during the time when David was conceived. Mrs. McDermott's counsel was not permitted to cross-examine Rabb as to whether she had sexual intercourse with any other men during this time period.

The evidence presented concerning McDermott's relationship with David after the child was born showed that the contact between the two was limited. McDermott came to visit Rabb the day after the child was born. Later on, McDermott occasionally provided milk, diapers, and toys. Although Rabb and McDermott would sometimes take all three boys on outings, the evidence did not show that McDermott ever took David anywhere without Rabb accompanying them.

David's birth certificate did not name a father. Rabb named "Rick Rosenbaum" as David's father on several applications for public assistance. However, Rabb testified

that she needed to name a father to obtain public assistance, and knew Rosenbaum to be sterile, so if DSHS initiated proceedings to collect child support from Rosenbaum, blood tests would show that Rosenbaum was not David's father.

According to Rabb, her reasons for not naming McDermott as the father of David included the fact that her general mental condition was affected by her ingestion of drugs and alcohol; McDermott did not want another child; McDermott was financially strained, and Rabb did not want the State to seek child support payments from him; Rabb was concerned that, because of her alcohol problem, McDermott might seek custody of David, as he had for his other sons; and finally, that McDermott had admitted to a homosexual relationship, and Rabb was concerned and embarrassed for herself and for her son.

Rabb's mother, Martha Sherry, testified that McDermott never denied that he was David's father, and she testified that David had physical characteristics similar to McDermott's boys, Trevor and Damian, whom she knew quite well because they had attended her day–care center. The trial court's findings indicated that it found Sherry to be very credible, and gave great weight to her testimony. Rabb also presented the testimony of Clinton Boutchyard, a close friend of McDermott's. Boutchyard testified that McDermott twice admitted to being David's father. The trial court also found Boutchyard to be very credible.

Mrs. McDermott's case consisted solely of her testimony, in which she stated that her son never told her that David was his child, but she admitted McDermott had never denied that fact either. Mrs. McDermott also stated her opinion that David did not resemble Trevor and Damian, but she also admitted that she had never seen David in person.

The trial court concluded that Jerry McDermott had fathered David Rabb, ordered that an amended birth certificate be issued, and awarded costs to Rabb and attorney's

fees for the guardian ad litem, payable by McDermott's estate. This appeal timely followed.

### COMMENCEMENT OF PATERNITY ACTION

The Uniform Parentage Act, enacted in Washington as RCW 26.26, delineates how paternity may be established. RCW 26.26.060(1)(a) states that:

> A child, a child's natural mother, a man alleged or alleging himself to be the father, a child's guardian, a child's personal representative, the state of Washington, or any interested party may bring an action *at any time* for the purpose of declaring the existence or nonexistence of the father and child relationship.

(Italics ours.) Although the statute does not specifically state that the phrase "at any time" means after the death of the alleged father, RCW 26.26.080(3) reads as follows concerning venue:

> (3) The action may be brought in the county in which the child or the alleged father resides or is found or, *if the father is deceased,* in which proceedings for probate of his estate have been or could be commenced.

(Italics ours.)

 Mrs. McDermott cites a number of out–of–jurisdiction cases in support of her argument that a paternity action does not survive the death of the alleged father. However, it is clear from the language of RCW 26.26.080(3) that the Legislature intended that a paternity action survive the alleged father's death.[1] Mrs. McDermott's claim on this issue is without merit.

### DEADMAN'S STATUTE

 RCW 5.60.030 states in pertinent part:

> [I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf

---

[1]Mrs. McDermott argues that the language of RCW 26.26.080(3) applies only to cases where a man has already been determined to be the father. This strained interpretation makes no sense. If paternity is already established, no paternity action need be brought.

as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . *Provided further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action.

The purpose of the deadman's statute is to prevent interested parties from giving self–serving testimony about conversations or transactions with the deceased, because the deceased is not available to rebut such testimony. *See Thompson v. Henderson,* 22 Wn. App. 373, 591 P.2d 784 (1979).

In the case before us, it is obvious that the adverse party, Mrs. McDermott, is administrator of the deceased's (Jerry McDermott's) estate. The analysis of whether the trial court properly admitted Rabb's testimony, therefore, turns on whether Rabb was a "party in interest or to the record" and whether sexual intercourse constitutes a transaction.

■■ Examining the latter question first, we note that this court set forth a definition of "transaction" as it relates to the deadman's statute as follows:

[T]he basic test for determining whether testimony relates to a "transaction" is whether the deceased, if living, could contradict the witness of his own knowledge.

*Vogt v. Hovander,* 27 Wn. App. 168, 173, 616 P.2d 660 (1979). From this definition, we hold that the trial court erred in deciding that sexual intercourse did not constitute a "transaction" for purposes of the deadman's statute. If McDermott were alive, he could have contradicted of his own personal knowledge Rabb's assertion that the two engaged in sexual intercourse at the pertinent time.

Mrs. McDermott cites *In re Burley,* 33 Wn. App. 629, 658 P.2d 8, *review denied,* 99 Wn.2d 1016 (1983) in support of her argument that Rabb was an interested party. In *Burley,* the court stated as follows:

The instant action, In the Matter of the Minor Child, Charles C. Burley, and the Mother, Bobbie June Burley, Appellant, v. Rollo Dean Johnson, Respondent, was commenced by Burley without the State as a party. Burley was the named plaintiff,

initiated the complaint, and was the real party in interest in that action.

*Burley,* at 639.

However, this language quoted from *Burley* deals with the application of CR 41(a)(4), the 2–dismissal rule, and the *Burley* court was making the point that the State had initiated the previous two actions under its independent right to bring an action to determine paternity; therefore, the action before the *Burley* court was the first action initiated by the mother, and the 2–dismissal rule did not apply.

Rabb cites a filiation case, *State v. Schimschal,* 73 Wn.2d 141, 437 P.2d 169 (1968), for the proposition that a filiation proceeding is a civil action for the benefit of the child. She argues that this supports her argument that she was not an interested party.

■ In his treatise, Karl Tegland notes first that the courts have disregarded the statutory language referring to a party to the record and have held that the statute bars only the testimony of an interested party. *See Raab v. Wallerich,* 46 Wn.2d 375, 282 P.2d 271 (1955) (testimony of decedent's wife regarding transaction permissible, because although she was a party in the action, she was not a party in interest).

Tegland states that a witness is an interested party with respect to the deadman's statute:

> (1) if the witness stands to either gain or lose as a direct result of the judgment, or (2) if the record may be used as evidence against the witness in some other action. The witness will be considered interested only if the witness's interest is present, certain, and vested. An interest that is uncertain, remote, or contingent is insufficient to bar the witness's testimony.

(Footnote omitted.) 5A K. Tegland, Wash. Prac. § 213 (3d ed. 1989).

We hold that the trial court's finding that Rabb is not seeking any financial gain or interest in McDermott's estate, as she testified, and as contained in her pretrial affidavit, is supported by substantial evidence. Thus, it can be

said that Rabb will receive no *direct* benefit from the judgment of paternity. Applying the definition set forth in Tegland, therefore, we hold that this finding supports the trial court's conclusion that Rabb is not an interested party, and her testimony is not barred by the deadman's statute.

### EVIDENCE OF PRIOR SEXUAL RELATIONS

RCW 26.26.120(4) states as follows:

> In an action against an alleged father, evidence offered by the alleged father with respect to a man who has not been joined as a party concerning the nonparty's sexual intercourse with the mother at or about the probable time of conception of the child is admissible in evidence only if the nonparty has undergone and made available to the court blood tests, including the human leukocyte antigen (HLA) test or other tests of comparable exclusionary power, the results of which do not exclude the possibility of the nonparty's paternity of the child.

Mrs. McDermott argues that the statute only applies to evidence presented by the alleged father, and does not preclude cross–examining the mother about possible additional sexual partners near the time of conception. Mrs. McDermott cites *State ex rel. Coyle–Reite v. Reite,* 46 Wn. App. 7, 728 P.2d 625 (1986) as permitting cross examination of the mother as to other possible fathers. However, *Reite* is not on point because this issue was not specifically before the *Reite* court, and it is unclear from the opinion exactly what questions were asked of the mother in cross examination.

Mrs. McDermott also cites *State v. Santos,* 104 Wn.2d 142, 702 P.2d 1179, 70 A.L.R.4th 1021 (1985), in which the court stated that in a paternity proceeding brought by the State, the State should question the mother as to whether she had intercourse with any other men within 1 month of the calculated date of conception. However, this statement is contained within a discussion concerning the State's obligation to accurately determine paternity. The *Santos* opinion went on to note that the State cannot blindly accept an admission of paternity without questioning the

mother and examining the child. *Santos,* at 150. This language is not on point with respect to whether an alleged father may cross–examine a mother concerning other sexual partners.

■ Neither party cites any cases construing the statutory language. The trial court's interpretation was that if the alleged father cannot present such evidence directly, he may not do so indirectly by cross–examining the mother. We hold that the trial court ruled correctly on this issue. As Rabb's brief points out, Mrs. McDermott's counsel had the opportunity to depose Rabb, and apparently learned of the possibility that others had fathered the child. Evidence concerning these other men would have been admissible if they had been joined as parties, as permitted by RCW 26.26.090. This was not done.[2]

Mrs. McDermott also argues that due process was violated by the trial court's ruling on this issue in combination with the ruling on the deadman's statute, because it precluded a meaningful hearing. In *State v. James,* 38 Wn. App. 264, 686 P.2d 1097, *review denied,* 103 Wn.2d 1004 (1984), this court noted that paternity proceedings are subject to due process, citing *Little v. Streater,* 452 U.S. 1, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (1981). In *Little,* the United States Supreme Court held that indigent alleged fathers against whom paternity proceedings had been brought were entitled to blood tests at state expense. In *James,* the court held that indigent alleged fathers might be entitled to appointed counsel in paternity actions under some circumstances.

Both of these cases concerned an action by the State to establish paternity, presumably as a result of public assistance grants to the mother and child. That situation is not before us here. Therefore, in the absence of state action, it

---

[2]We recognize that in certain circumstances good cause might be shown as to why the potential father(s) had not been joined and/or had not undergone the required blood tests. In such a situation, the trial court, in its discretion, could grant appropriate relief. Such a showing of good cause was not made here.

is questionable whether any due process issues arise. In any event, however, under a due process analysis, Mrs. McDermott's contention must fail. Her argument is that the trial court's rulings prevented her from presenting her case.

An examination of the record shows that this is simply not so. Mrs. McDermott's counsel was permitted to cross–examine Rabb about statements she had made naming others as the father, about the fact that she had named Rosenbaum on the public assistance applications, and about the fact that she told her physician that Rosenbaum was the father. Therefore, Mrs. McDermott was able to get much of the same information before the trier of fact, even though the exact question of sexual intercourse with specific individuals was not permitted. Mrs. McDermott's contention that she did not receive a meaningful hearing cannot be sustained.

## Sufficiency of the Evidence

Where the trial court has weighed the evidence, review is limited to ascertaining whether the findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment. *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 545 P.2d 1193 (1976). Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair–minded, rational person of the truth of the declared premise. *In re Snyder,* 85 Wn.2d 182, 532 P.2d 278 (1975).

In the case before us, Rabb presented her testimony that she had sexual intercourse with McDermott at the time of David's conception. She presented testimony of others that when remarks were made to McDermott suggesting that he was David's father, he either acknowledged or did not deny that he was David's father. She presented evidence that McDermott assisted her financially with the child, even though such activity was minimal. Rabb also presented testimony and photographs concerning David's physical similarity to McDermott and his sons.

Only this last piece of evidence was rebutted by Mrs. McDermott by her own testimony. However, on cross examination she admitted that she had never seen David. In light of the preponderance standard, we hold that the trial court's findings are supported by substantial evidence and that on the basis of these factual findings, the trial court's conclusion that McDermott fathered David Rabb must be affirmed.

PEKELIS and BAKER, JJ., concur.