[No. 11676-0-III.   Division Three.   January 12, 1993.]

MICHAEL J. BERNSEN, *Appellant*, v. BIG BEND ELECTRIC COOPERATIVE, INC., *Respondent*.

428

*Susan Cawley, David E. Sonn,* and *Sonn & Aylward, P.S.,* for appellant.

*Daniel M. Danforth* and *Underwood, Campbell, Brock & Cerutti P.S.,* for respondent.

THOMPSON, J. — The trial court awarded a judgment of $49,085.50 principal plus $607.44 costs to Michael J. Bernsen for damages sustained when Big Bend Electric Cooperative, Inc. (Big Bend) conditioned delivery of electrical service on payment of accounts for which he was not liable.

Michael Bernsen appeals his damage award, contending the trial court erred in reducing damages for failure to mitigate. Big Bend cross-appeals, contending its actions were not illegal and, even if they were, the damage award exceeded the proof at trial. We reverse and remand.

In late 1988, Michael Bernsen purchased farm property in Franklin County from Puget Sound National Bank. The bank acquired the property by foreclosing the mortgage of Real West Development. Real West Development was a limited partnership whose general partner was Paul Bernsen, Michael's father. Real West and Paul Bernsen were under federal bankruptcy court protection at the time, as were other entities owned, managed or controlled by Paul Bernsen. Big Bend was an unsecured creditor in those bankruptcies.

Big Bend is a Washington corporation organized under the Rural Electrification Act of 1936. It is the sole provider of electricity for the property purchased by Michael Bernsen.

In November 1989, Michael Bernsen contacted Irrigation Specialists, Inc., regarding installation of a new water delivery system for four irrigation circles. A new water delivery system was designed which required installation of a water reservoir and extension of an electrical power line. The reservoir was constructed at a cost of $5,294.82 and in January 1990, Michael Bernsen leased a portion of the property

to two potato farmers. Under the terms of the lease, Michael Bernsen was to receive one-half of the lessees' net crop proceeds as rent.

On January 17, 1990, Michael Bernsen contacted Big Bend regarding extension of the power line. He was told it would not be provided until the bankruptcy obligations and expenses of Paul Bernsen were paid.[1] On January 24, Paul Bernsen went to Big Bend's Mesa office "to get the misunderstanding straightened out".

On February 2, a Big Bend engineer went to Michael Bernsen's property where he met the irrigation system designer. He staked out the property. The engineer later prepared a work order which estimated the cost of the extension at $18,561. Big Bend then referred Michael Bernsen to its Ritzville office where he was referred to Big Bend's legal counsel.

At a meeting on February 5, Big Bend's counsel told Michael Bernsen he could not obtain a power line extension or power unless his father's bankruptcy obligations were paid. According to the minutes of a board of directors' meeting held February 22, Big Bend's attorney "was taking the position with Mr. Bernsen that Mr. Bernsen and the previous Bernsen Trust, Real West accounts and Eagle Lake Ranch were essentially the same individuals . . . [and] . . . Michael Bernsen did not qualify as a new member [of the cooperative]".

Michael Bernsen offered to pay the entire cost of the power line extension in advance of installation. Typically, only one-half of the payment was required in advance. When Big Bend again refused, Michael Bernsen commenced this action.

In mid-March 1990, Irrigation Specialists told Michael Bernsen a decision had to be made whether to go forward with the newly designed irrigation system or rehabilitate the old one. Michael Bernsen authorized rehabilitation. At that

---

[1]Big Bend originally demanded payment of the obligations owed by Paul Bernsen, Real West, the Bernsen Trust, and Eagle Lake Ranch. The record suggests that Paul Bernsen owned or controlled these entities. The debts are generically referred to in the findings as "Paul Bernsen's debts".

time, both Michael Bernsen and Irrigation Specialists believed rehabilitation could be completed in time for potato planting. The most advantageous planting time was between April 5 and April 15.

On April 12, the power hookup to the leased property was authorized. However, because of the unavailability of equipment and problems with the system, it was not fully operational until early May. There were no net proceeds from the potato crop.

The reservoir Michael Bernsen constructed was of no value to the rehabilitated system which drew water from the South Columbia Basin Irrigation Project. In addition, the new system would have required 225 horsepower to operate. The rehabilitated system requires 400 horsepower.

On September 24, Michael Bernsen amended his complaint for rate discrimination to include (a) a claim for damages, (b) injunctive relief requiring Big Bend to provide electrical service upon the terms given other customers, and (c) attorney fees and costs.

In a bench trial, the court ruled in favor of Michael Bernsen and awarded $49,085.50 as compensatory damages. The trial court's $49,085.50 damage award included the following:

| | |
|---|---|
| Extra Cost of Old System | $21,125.00 |
| ($96,125 less $75,000) | |
| Extra Power Cost 1990 | 8,750.00 |
| Extra Power Cost 1991 | 8,750.00 |
| Reservoir | 5,294.82 |

## DAMAGES FOR REHABILITATION

We address first the parties' contention the trial court erred in determining the cost of rehabilitating the old irrigation system over the cost of installing a new system. Michael Bernsen contends the unrefuted testimony established its cost at $61,921, not $75,000. In its cross appeal, Big Bend contends the trial court failed to include the $18,561 power line extension as part of the new system's cost.

The only testimony regarding the cost of the new system came from Brent Richeson of Irrigation Specialists. Mr. Richeson testified he prepared a detailed estimate of costs for

installing the new system. The cost was $61,921. Although he also stated he gave Michael Bernsen a "ball park" estimate of $70,000 to $75,000 when they first discussed the project, it was the practice of Irrigation Specialists not to provide a detailed estimate until the customer decided to go ahead.

The trial court's finding of $75,000 as the cost of the new system is erroneous because it rejects Mr. Richeson's uncontroverted testimony and fails to include the cost of the power line extension. *Smith v. Pacific Pools, Inc.*, 12 Wn. App. 578, 582, 530 P.2d 658, *review denied*, 85 Wn.2d 1016 (1975); *State ex rel. Coyle-Reite v. Reite*, 46 Wn. App. 7, 11, 728 P.2d 625 (1986). The cost of the new system, if installed by Irrigation Specialists, would have been $61,921 plus $18,561 for the power line extension.[2] The "extra" cost incurred by Michael Bernsen in having to install a rehabilitated system, not a new system, was $15,643, not $21,125.

### MITIGATION OF DAMAGES

We next consider whether the trial court erred in failing to award Michael Bernsen lost rent for 1990 from his lease on the basis he failed to mitigate his damages. The issue of mitigation was raised by the trial court sua sponte. The trial court concluded Michael Bernsen did not make the wrong choice, but failed to make a timely choice.

Michael Bernsen contends he had no duty to mitigate because Big Bend committed an intentional or continuing tort, and even if he had a duty to mitigate, Big Bend waived its right to assert the defense by not pleading it as an affirmative defense. In the alternative, Michael Bernsen contends he fulfilled his duty to mitigate by making a timely choice, and the trial court's finding to the contrary is not supported by substantial evidence.

Big Bend contends mitigation is applicable, whether the case is characterized as a contract case or a rate discrimination case. Annot., *Measure and Amount of Damages for Breach of Duty To Furnish Water, Gas, Light, or Power Serv-*

---

[2]During oral argument, counsel for Michael Bernsen conceded the uncontroverted evidence established $18,561 as the cost for installing the power line.

*ice,* 108 A.L.R. 1174 (1937); *In re Two Crow Ranch, Inc.,* 159 Mont. 16, 494 P.2d 915 (1972). According to Big Bend, mitigation was properly at issue because the evidence which supported the defense was admitted by Michael Bernsen.

1. Applicability.

■ The doctrine of mitigation of damages, sometimes referred to as the doctrine of avoidable consequences, prevents recovery for those damages the injured party could have avoided by reasonable efforts taken after the wrong was committed. *Young v. Whidbey Island Bd. of Realtors,* 96 Wn.2d 729, 733-34, 638 P.2d 1235 (1982); *Snowflake Laundry Co. v. MacDowell,* 52 Wn.2d 662, 674, 328 P.2d 684 (1958); *Walker v. Transamerica Title Ins. Co.,* 65 Wn. App. 399, 405, 828 P.2d 621 (1992). Generally speaking, the doctrine applies in both contract and tort cases. *Compare* Restatement (Second) of Torts § 918 (1979) *with* Restatement (Second) of Contracts § 350 (1981); *Walker,* at 405 n.6. *But see Hogland v. Klein,* 49 Wn.2d 216, 221, 298 P.2d 1099 (1956) (no duty to mitigate in case of intentional tort); *Desimone v. Mutual Materials Co.,* 23 Wn.2d 876, 162 P.2d 808 (1945) (no duty to mitigate if tort is a continuing one).

■ Although we have found no authority in Washington on the issue of whether mitigation of damages applies in a rate discrimination case, and none has been cited, those jurisdictions deciding the issue have generally held it applicable. *See* 108 A.L.R. 1174. These decisions are consistent with Washington's recognition of the doctrine in both tort and contract cases. Although Michael Bernsen claims an exception applies to continuing and intentional torts, he neither pleaded nor proved Big Bend's action constituted a continuing or intentional tort.

2. Waiver.

Having determined the doctrine of mitigation is applicable to a rate discrimination theory of liability, we turn to Michael Bernsen's contention the doctrine could not be asserted by Big Bend because of waiver.

■ Failure to mitigate damages is an affirmative defense under CR 8(c). Generally, affirmative defenses are waived

unless they are (1) affirmatively pleaded, (2) asserted in a motion under CR 12(b), or (3) tried by the express or implied consent of the parties. *Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 76, 549 P.2d 9 (1976); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 500, 663 P.2d 132, *review denied*, 100 Wn.2d 1005 (1983); *Rainier Nat'l Bank v. Lewis*, 30 Wn. App. 419, 422, 635 P.2d 153 (1981). However, if the substantial rights of a party have not been affected, noncompliance is considered harmless and the defense is not waived. *Farmers Ins.*, at 76; *Mahoney v. Tingley*, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975).

Big Bend did not affirmatively plead failure to mitigate in its responsive pleading, nor did it raise the defense in a motion brought pursuant to CR 12(b). Michael Bernsen timely objected under CR 12(h)(2) when the trial court raised the mitigation defense and moved for a directed verdict as to the applicability of the doctrine. Such evidence establishes Michael Bernsen's lack of express consent.

As Big Bend contends, however, consent can be implied because evidence from which the defense arose was admitted without objection.[3] *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 766, 733 P.2d 530 (1987); *Department of Rev. v. Puget Sound Power & Light Co.*, 103 Wn.2d 501, 504, 694 P.2d 7 (1985). The parties argued mitigation and the trial court ruled on it. The defense of mitigation was properly treated as if raised in the pleadings. *Reichelt*, at 766. Furthermore, although the trial court informed Michael Bernsen he could have a continuance to prepare for the defense, he did not request one. *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wn.2d 7, 514 P.2d 1381 (1973).

3. Evidentiary Support.

We turn next to Michael Bernsen's alternative contention that even if mitigation is a defense, the trial court's finding

---

[3] The evidence which gave rise to a mitigation issue arose from the following testimony: As early as November 1989, Michael Bernsen knew the old irrigation system was available; he knew in January 1990 the extension was not going to be provided by Big Bend unless conditions were met; and he knew he was responsible to supply water to the lessees and told them it would be ready in early March.

of failure to mitigate is not supported by substantial evidence.

Michael Bernsen was forced into a choice between completing the new irrigation system or rehabilitating the existing one. As late as February 2, 1990, when Big Bend's engineer staked out Michael Bernsen's property, it appeared as if Big Bend might proceed with the power line extension and hookup. Discussions continued. In mid-March, Irrigation Specialists said a decision had to be made. A decision was made by Michael Bernsen in late March or early April. The testimony established that at the time the decision was made, both Michael Bernsen and Irrigation Specialists believed the rehabilitation could be completed in time for planting of potatoes by the lessees.

█ █ The burden of proving failure to mitigate is on the party whose wrongful conduct caused the damage. *Smith v. King*, 106 Wn.2d 443, 451, 722 P.2d 796 (1986). Here, Big Bend failed to meet its burden. Michael Bernsen was forced into a dilemma by Big Bend. The testimony established that a decision was made which, at the time it was made, appeared both reasonable and timely. *Cf. Hogland*, at 221; C. McCormick, *Damages* § 35, at 133 (1935). The trial court's finding to the contrary was not supported by substantial evidence. *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 797 P.2d 477 (1990). We do not reach the issue of whether other actions or inactions by Michael Bernsen or his lessees were timely or unreasonable (*e.g.*, Big Bend's contention the potato seed could have been sold and an alternative crop planted).

## LOST PROFITS

We address next Michael Bernsen's contention the trial court should have awarded him $124,695 for 1990 rent proceeds he lost based on the testimony introduced at trial.

As Big Bend contends, due to the trial court's conclusion that failure to mitigate precluded Michael Bernsen's recovery for lost profits, it did not consider the evidence or enter findings of fact or conclusions of law which allow for appel-

late review. We therefore remand for further proceedings on the issue of lost profits.

## EVIDENTIARY ISSUES

Michael Bernsen also contends the trial court erred in allowing testimony of witnesses not identified by Big Bend in pretrial discovery, in admitting a journal, and in considering evidence outside the record. *Lampard v. Roth*, 38 Wn. App. 198, 201-02, 684 P.2d 1353 (1984); ER 402.

Two of Big Bend's witnesses were not disclosed until after trial began. No satisfactory explanation was given for failure to respond to Michael Bernsen's discovery requests. The trial court abused its discretion by allowing their testimony. *Lampard*. However, neither their testimony nor the journal was relied on by the trial court in reaching its decision. Any error was harmless. *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 668 P.2d 571 (1983).

Michael Bernsen also objects to the trial court's examination of witnesses and its recitation of personal financial transactions.

A court may question witnesses. *E.g.*, *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980). By doing so, their testimony is not "outside the record" as Michael Bernsen contends. As to the extraneous comments by the trial court, there is a presumption in a bench trial that the court will consider only admissible evidence. *In re Marriage of Morrison*, 26 Wn. App. 571, 613 P.2d 557 (1980). Michael Bernsen has failed to rebut the presumption.

## CROSS APPEAL

In addition to its assignment of error based on improper calculation of damages, discussed herein, Big Bend assigns error to finding of fact 7 and conclusion of law 2.

In finding of fact 7, the trial court found Big Bend's sole basis for refusing to provide the power line and power was Michael Bernsen's refusal to pay his father's bankruptcy obligations. According to Big Bend, there was sufficient evidence to show it had a reasonable basis for imposing special conditions on Michael Bernsen. We disagree. There is sub-

stantial evidence to support finding of fact 7 and a distinct lack of evidence to support Big Bend's contention. Findings of fact supported by substantial evidence will not be disturbed on appeal. *American Nursery Prods.*, at 222.

In conclusion of law 2, the trial court concluded Big Bend's conditions were illegal. Big Bend contends the illegality conclusion is based on alleged bankruptcy code violations which the court lacked jurisdiction to consider.

Although the trial court found Big Bend's actions in trying to collect Paul Bernsen's bankruptcy obligations from Michael Bernsen violated the automatic stay imposed by 11 U.S.C. § 362, the conclusion of illegality is not dependent on such finding. The factual basis for the trial court's conclusion of illegality is Big Bend's insistence that Michael Bernsen pay the debts of another in order to receive service.[4] Whether the third party debtor was in bankruptcy is not determinative and we decline to address the jurisdictional claim raised. A trial court's judgment can be sustained upon any theory established by the pleadings and supported by the proof. *LaMon v. Butler*, 112 Wn.2d 193, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989).

We reverse and remand.

SHIELDS, C.J., and MUNSON, J., concur.

After modification, further reconsideration denied March 2, 1993.

---

[4]Written findings may also be supplemented by the trial court's oral or written decision. *In re LaBelle*, 107 Wn.2d 196, 728 P.2d 138 (1986). Here, the trial court's decision clearly sets forth the basis for determining illegality:

> Plaintiff has cited cases holding that defendant cannot "discriminate" by refusing service because of a debt owed by a predecessor for which the plaintiff is not liable. Defendant has not contested this issue but contends its conduct was justified because Mike Bernsen was somehow liable for those debts. [This court] can find no basis for this contention. The contention that Mike Bernsen was going to have to pay the claim in order to achieve his purpose of acquiring the bankrupt estate obviously does not justify this conduct.

Clerk's Papers, at 389.