[No. 5810-3-II.   Division Two.   March 18, 1983.]

COPYMATE MARKETING, LTD., *Respondent,* v. MODERN MERCHANDISING, INC., *Appellant.*

*Robert Baronsky,* for appellant.

*Lynn Hurst,* for respondent.

PETRIE, J.—Defendant, Modern Merchandising, Inc., appeals from a judgment awarding plaintiff, Copymate Marketing, Ltd., damages in the principal amount of $65,720. On appeal, defendant's primary contention is that the trial court, after determining that defendant had, without legal justification, repudiated a contract to purchase 3,000 photocopiers from plaintiff (which determination is not challenged on appeal), applied the incorrect measure of damages. We find no error and affirm the judgment.

Both parties agree that RCW 62A.2–708 provides the basis for measuring damages. Defendant contends that subsection (1) of the statute applies. Plaintiff contends that subsection (2), as utilized by the trial court, properly measured the damages in the case at bench.

RCW 62A.2–708 provides:

(1) Subject to subsection (2) and to the provisions of this Article with respect to proof of market price (RCW 62A.2–723), the measure of damages for non–acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (RCW 62A.2–710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (RCW 62A.2–710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Greatly simplified, yet adequate to resolve the issues, these are the facts. Plaintiff had a contract with one Dowling which gave it the right for a price of $51,750, to purchase 3,000 photocopiers which had been in long–term storage in Canada. In May 1979, defendant agreed to purchase these photocopiers from plaintiff at a unit price of $55 with plaintiff expending $47,350 on an advertising program. On June 6, before delivery and, indeed, before Dowling had arranged for transfer of the items, defendant repudiated the contract without legal justification. Plaintiff sued for resulting damages.

Key to the issue on appeal are two of the trial court's findings as follows:

When Copymate Marketing, Ltd. learned of the repudiation of the contract by Modern Merchandising, there was no active or reasonably available market for the resale of the Copymate copiers which Copymate Marketing, Ltd. was in a position to take advantage of at a price comparable to the contract price.

. . . After the repudiation of the contract by Modern Merchandising, Inc., Copymate Marketing Ltd. had no reasonable means or market available to it by which it could have reasonably anticipated reselling the 3,000 copiers for a price in excess of its cost of acquisition of the copiers.

■ We find substantial evidence in the record to support those findings. Defendant's office equipment buyer testified that her best offer to plaintiffs (for a variety of reasons including the fact that the units had been in storage since 1970 and had no previously successful marketing program) would be "to negotiate for a closeout price" as an

accommodation to take them "off their hands at half", and then she would only "buy a sampling of it, certainly not three thousand units." Defendant's vice–president testified that with his knowledge of the product, gleaned only after the contract had been entered into, he would have had his buyers consider a purchase in one or two ways only:

> One of them would have been on a completely guaranteed sale basis where we had no obligation to keep any that didn't sell. The second would have been that I would have considered making an offer at a price that I thought would move them based on them being distressed merchandise.

Once those findings had been made, it follows inexorably that, in the words of subsection (2) of RCW 62A.2–708, "subsection (1) is inadequate to put the seller in as good a position as performance would have done . . ." Accordingly, the trial court awarded to plaintiff its anticipated net profit. This damage award was based on the contract price ($165,000), less plaintiff's cost savings resulting from the repudiation ($47,350 for the contemplated but no longer necessary advertising program and $180 import duty charge for entry into this country), and less plaintiff's cost of acquisition ($51,750). The trial court allowed nothing for plaintiff's overhead expenses because the court found that plaintiff had failed to meet its burden of proof as to those expenses.

█ Notwithstanding the foregoing, defendant contends that the trial court failed to require plaintiff to mitigate its damages. Following the repudiation, plaintiff terminated its purchase order with Dowling. The trial court found this was "a commercially reasonable action." This finding, too, is supported by substantial evidence in the record. Though the Uniform Commercial Code does not expressly require a seller to mitigate damages in the event of a buyer's unjustified repudiation, the code does not abrogate the common law requirement. Further, sections of the code require "reasonable commercial judgment" (RCW 62A.2–704(2)), "good faith [exercised] in a commercially reasonable man-

ner" (RCW 62A.2-706(1)), and "reasonable effort to resell" (RCW 62A.2-709(1)(b)). We cannot and do not fault plaintiff, under all the circumstances present here, for any failure to pursue more aggressively a search for other purchasers at a price in excess of its original acquisition cost from Dowling.

Judgment affirmed.

WORSWICK, A.C.J., and REED, J., concur.