[No. 5278-4-II.   Division Two.   August 9, 1983.]

THEODORE L. HERIOT, ET AL, *Respondents,* v. LESTER SMITH, ET AL, *Appellants.*

*Douglas O. Whitlock,* for appellants.

*James B. Finlay,* for respondents.

REED, J.—This boundary dispute concerns the ownership of a narrow, wedge–shaped parcel of land located on the north bank of the Columbia River in Pacific County. State Route 401 divides the contested area into north and south portions. The neighbor residing to the west (Heriot) bases his claim to the parcel on the results of a survey conducted in December 1979. The easterly neighbor (Lewis) asserts ownership by operation of the doctrines of (1) adverse possession and (2) boundary by acquiescence. The contested area, depicted in the sketch, lies between the old fence line and the eastern boundary of the 1979 survey. The trial court quieted title to the parcel in Heriot, rejecting the theories urged by the Lewises. For the reasons that follow,

we too reject the claim founded on the doctrine of boundary by acquiescence. The trial court's findings of fact, however, are sketchy regarding the theory of adverse possession. Further, there is uncontroverted evidence in the record supporting such a claim, at least as to that portion of the disputed area located north of SR 401. Because this court is not a factfinding body we would ordinarily remand to the trial court for additional factfinding. The evidence, however, is not only uncontroverted but undisputed as well. Accordingly, we hold that adverse possession has been established as a matter of law.

This dispute had its origin in 1933. At that time Charles Calendar divided a single parcel of land, conveying the easterly parcel to the Gundersons and the westerly parcel to the Seablooms. Shortly thereafter, Calendar conducted a survey and set a series of stakes to delineate the property line dividing the parcels. A fence was erected along this line by the joint efforts of Mr. Gunderson and Mr. Seabloom. The fence consisted of four cedar posts connected by three strands of barbed wire. The area where the fence was located was bushy and was not actively used to any appreciable extent by either party during the next several years.

In 1963 Theodore Heriot became interested in purchasing the Seablooms' property. Before a conveyance was made, Mr. Heriot and Mr. Seabloom set several posts in the ground east of the old fence line. The next morning the posts were gone—they had been removed at Mrs. Gunderson's direction. In response, Mr. Seabloom sued Mrs. Gunderson. For reasons not appearing in the record, the lawsuit was dropped. Mr. Heriot testified that he placed another set of posts in the ground east of the old fence line prior to 1965 but these posts were removed also.

In 1973 the Lewises purchased Mrs. Gunderson's parcel. They cut some trees in the area of the old fence and cleared brush up to the fence line. In 1979 Heriot had a survey conducted which established the true property line to be east of the old fence. This litigation followed.

The Lewises first assign error to the trial court's refusal to accept the old fence as the true boundary line by operation of the doctrine of acquiescence. In order to prevail, a party claiming under the doctrine of acquiescence must show by clear, cogent and convincing evidence that he and his neighbor recognized a physical boundary as a true line, not just a barrier, for the statutory period necessary to establish adverse possession. *Muench v. Oxley,* 90 Wn.2d 637, 584 P.2d 939 (1978).

The trial court made two findings particularly relevant to the Lewises' claim:

(10) That the land on each side of the fence was bushy and not used by either party or their predecessors in interest.

(12) That the predecessors of plaintiffs and defendants did not agree that the fence was to be the mutual boundary line.

The Heriots would have us treat these findings as verities because the Lewises did not refer to them by number or set them out verbatim in their assignments of error as required by RAP 10.3(g). It is clear, however, from the assignments of error which findings are challenged. Accordingly, we choose to overlook the defect. *See Kaufman Bros. Constr., Inc. v. Estate of Olney,* 29 Wn. App. 296, 299 n.3, 628 P.2d 838 (1981).

Although we will not treat the findings as verities, they must stand if supported by substantial evidence. *Copymate Mktg., Ltd. v. Modern Merchandising, Inc.,* 34 Wn. App. 300, 660 P.2d 332 (1983). We have reviewed the record and conclude that the evidence and reasonable inferences therefrom support the trial court's finding that there was no *mutual* recognition that the fence was the true boundary line. A reasonable synopsis of the evidence is found in the trial judge's memorandum opinion.

The fence was considered by Gundersons to be the property line, though there is no showing the land to be fenced on the east was treated by Seabloom as Gundersons' land, or that Seabloom considered the fence to be the true boundary line . . .

The proof in this case shows only the subjective intent of defendants' predecessor. There is little or no reference to the acts of Seabloom; there is no reference to any agreement by him or knowledge by him that the fence was a boundary line. His conduct, in view of the brushy property, is inconclusive to establish acquiescence.

Acquiescence in a property line cannot be established by the unilateral acts of one party. *Houplin v. Stoen,* 72 Wn.2d 131, 431 P.2d 998 (1967). Accordingly, the Lewises' first assignment of error is without merit.

■ If the evidence is insufficient to fix the old fence line as a boundary by acquiescence, the Lewises urge us to hold that they and their predecessors in interest have been in adverse possession of the disputed property for the statutory period. Possession of property for the statutory period (10 years) ripens into title only if the possession was (1) open and notorious, (2) actual and uninterrupted, (3) hostile, and (4) exclusive and under a claim made in good faith. *Peeples v. Port of Bellingham,* 93 Wn.2d 766, 613 P.2d 1128 (1980). *See also* Stoebuck, *Adverse Possession,* 35 Wash. L. Rev. 53 (1960). On review, "adverse possession is a mixed question of law and fact. Whether the essential facts exist is for the trier of fact; but whether the facts, as found, constitute adverse possession is for the court to determine as a matter of law." *Peeples v. Port of Bellingham, supra* at 771.

■ The trial court rejected the Lewises' claim of adverse possession because, in the trial judge's opinion, there was no actual possession of the disputed property. Our review of the undisputed evidence in the record convinces us that the trial judge construed the element of "actual possession" too narrowly. Unfortunately for the Lewises, the findings of fact do not reflect the evidence necessary to support their claim. We, of course, are not a factfinding body. Certainly we cannot disregard findings supported by substantial evidence. Can this court, however, search the record for facts to supplement the trial court's findings? Ordinarily, this, too, is not a proper function of an appellate court. *Old*

*Windmill Ranch v. Smotherman,* 69 Wn.2d 383, 418 P.2d 720 (1966). We will not, however, remand for further fact-finding when to do so would be a useless act, *e.g.,* where there is *undisputed,* competent evidence in the record supporting a party's claim. *State v. Mecca Twin Theater & Film Exch., Inc.,* 82 Wn.2d 87, 507 P.2d 1165 (1973); *Cogswell v. Cogswell,* 50 Wn.2d 597, 313 P.2d 364 (1957); *Seattle Flight Serv., Inc. v. Auburn,* 24 Wn. App. 749, 604 P.2d 975 (1979); *LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 496 P.2d 343 (1972); *see also Schoonover v. Carpet World, Inc.,* 91 Wn.2d 173, 588 P.2d 729 (1978); *Chmela v. Department of Motor Vehicles,* 88 Wn.2d 385, 561 P.2d 1085 (1977) (administrative law context).

We hasten to add that undisputed evidence is *not* synonymous with uncontradicted evidence. This court cannot add to a trial court's findings of fact merely because a fact was testified to and was not directly contradicted by another witness. By "undisputed" fact we mean a fact disclosed in the record or pleadings that the party against whom the fact is to operate either has admitted or has conceded to be undisputed. *Yale Univ. v. New Haven,* 169 Conn. 454, 363 A.2d 1108 (1975).

Turning to the verbatim report of proceedings we find the following testimony by Mr. Heriot:

Q. Mr. Heriot, when did you purchase the property from the Seablooms?

A: I believe it was around 1960—in the middle sixties. The exact year, I can't remember it offhand.

Q. You were aware of the lawsuit between the Seablooms and Gundersons?

A. Yes.

Q. So you had actual knowledge there was some apparent dispute at that time, is that correct?

A. Yes.

Q. You were also aware, were you not, that the fence line and those fence posts were there at the time you purchased the property from the Seablooms?

A. Yes.

Q. So for 15 years now you've been aware of the fact that Mrs. Gunderson considered that to be the line, is that correct?

A. Well, no, that is not correct. I did something about it. When I purchased that property from Gus, he told me where he thought his line was. I went down there with him and we put some fence posts in on the line that he thought was his. The next morning, the fence posts were gone that we put in. That is, I believe, what Mrs. Gunderson is referring to as removing posts. We were putting posts in.

Q. Those four posts that have been testified to here today were there in the middle sixties when you purchased the property, is that correct?

A. As far as I know, yes.

Q. You were aware at the time you purchased the property that Mrs. Gunderson considered those four posts to be the boundary? That's a true statement?

A. I understood what she said that that was her line.

Q. You actually sat in on part of the trial, didn't you?

A. No.

Q. You were aware of what was going on, is that correct?

A. I was aware of the trial.

Q. And aware there was a dispute about the line?

A. Yes.

Q. Is your—you knew that those four fence posts were there in the middle sixties when you purchased the property, and you didn't do anything until you filed this lawsuit, is that correct?

A. Like I said, I tried to do something, but everytime we tried to put the fence line where I thought I had purchased, the fence posts were pulled out.

Q. You only did that one time?

A. No, no. Twice.

Q. Would that be in the middle sixties?

A. That would be just prior to the suit that they went to court over.

Q. That would have been prior to 1965?

A. Yes.

Q. From '65 until you filed this lawsuit, during that period of time, you didn't do anything?

A. No.

Q. During that time you were aware of the fact that Mrs. Gunderson considered that to be the line?

A. Yes.

In response to his own attorney's question, Mr. Heriot also testified as follows:

Q. You heard Lewis testify that he brushed it out once a year. Did you see evidence of that?

A. I've seen evidence of it being brushed out, but whether it was once a year, I don't know.

Moreover, Mr. Heriot introduced as an exhibit a survey conducted in December 1979 which acknowledged the presence of the four cedar posts set in 1933. From Mr. Heriot's own testimony and exhibits, the following facts are established as a matter of law:

1. A fence set in 1933 was in existence in the disputed area between 1965 and December 1979.

2. Mr. Heriot knew that Mrs. Gunderson and her successors in interest, the Lewises, considered the old fence to be the boundary.

3. On two occasions Mr. Heriot set fence posts east of the old fence and on both occasions the posts were removed at Mrs. Gunderson's direction.

4. The Lewises cleared brush up to the fence line.

■■ We review the facts as found by the trial court, and those established by undisputed evidence, mindful that "what constitutes possession or occupancy of property for purposes of adverse possession necessarily depends to a great extent upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied." *Frolund v. Frankland,* 71 Wn.2d 812, 817, 431 P.2d 188 (1967); *Howard v. Kunto,* 3 Wn. App. 393, 477 P.2d 210 (1970). Accordingly, the claimant need only demonstrate use of the same character that a true owner might make of the property considering its nature and location. *Frolund v. Frankland, supra.*

Acts of actual possession serve two purposes. First, actual possession gives the claimant a stake in the property. Second, acts of possession raise the "flag of hostile possession," putting the true owner on notice of the adverse claim. Mr. Heriot conceded that he was well aware of his neighbor's

adverse claim. Thus, the essential issue here is whether the Gundersons and Lewises had possession sufficient to give them a stake in the property.

We consider first Mrs. Gunderson's acts of possession. The land in dispute is located at the edge of Mrs. Gunderson's property and is overgrown with berry vines. Considering the nature and character of the land, a rightful owner might very well make little active use of such property. Indeed, the one distinctive act of dominion and control that a true owner could assert over such property is to exclude others. On two occasions Heriot encroached upon the land claimed by Mrs. Gunderson by setting posts in the ground east of the old fence line. On both occasions his posts were swiftly removed. The ejectment of intruders is an act both characteristic and indicative of the dominion and control a true owner might exercise over the property, considering its nature and location. Accordingly, we hold that Mrs. Gunderson demonstrated sufficient acts of possession to satisfy the "actual possession" element of adverse possession.

Turning to the Lewises, we note that they are in privity of title with their predecessor in interest. Thus, they are entitled to tack their period of possession to that of Mrs. Gunderson. *See El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 376 P.2d 528 (1962); *Howard v. Kunto, supra.* The Lewises kept the brush cleared to the old fence line. Such acts are customarily considered sufficient to constitute possession of land of the character in dispute here.

> If one asserting ownership of a vacant lot goes on it at reasonable intervals, marks its limits or corners with visible monuments, clears it of brush, grass, and weeds to the limits so indicated, and points it out as his property to his neighbors and friends, it constitutes adverse possession within the meaning of the law.

2 C.J.S. *Adverse Possession* § 42 (1972). We are particularly comfortable with our holding that the Lewises' acts of possession were sufficient in light of the fact that Heriot was well aware of his neighbor's adverse claim. *See* Stoebuck, *Adverse Possession,* 35 Wash. L. Rev. 53, 71 (1960).

In sum, the facts as found by the trial court, when coupled with other undisputed evidence, establish the Lewises' claim of adverse possession as a matter of law—at least as to the disputed area located north of SR 401. The old fence lies entirely north of the highway. The facts fail to support the Lewises' claim to the disputed area south of SR 401. Accordingly, the trial court is reversed and title to the disputed strip located north of SR 401 is quieted in the name of the Lewises. As to the disputed area located south of the highway, the trial court is affirmed.

WORSWICK, A.C.J., and PETRIE, J., concur.