[No. 27670-1-I.    Division One.    April 19, 1993.]

*In the Matter of the Personal Restraint of*
ROBERT DALE MERRITT, *Petitioner.*

*Rafe Schwimmer* and *Patterson, Metcalf, Rowley &
Schwimmer,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Sally Olsen, Deputy,* for respondent.

PEKELIS, A.C.J. — Robert Dale Merritt appeals from an order dismissing his personal restraint petition. We affirm.

I

On February 25, 1981, Merritt and two codefendants were charged in the alternative with intentional murder and felony murder arising from a second degree assault with a deadly weapon resulting in death. On May 1, Merritt pleaded guilty to felony murder in the second degree while armed with a deadly weapon. Pursuant to the plea and the prosecutor's sentencing recommendation, Merritt was sentenced to a 20-year term of confinement, coupled with a statutory minimum term owing to a deadly weapon finding.

From arraignment to sentencing Merritt was represented by Randy Barnard, appointed counsel from the now defunct Eastside Defenders Association. At the plea hearing Barnard advised the court that he had met with Merritt and discussed the case several times, reviewed every element of Merritt's statement on the plea of guilty with Merritt, reviewed the prosecutor's sentencing recommendation with Merritt, and discussed with Merritt a police report and the two witness statements considered by the court in determining whether there was a factual basis for the plea.[1]

In 1989 Merritt filed a personal restraint petition alleging prosecutorial misconduct and ineffective assistance of counsel. This court dismissed all of his claims except for one aspect of the ineffective assistance claim, *viz.,* whether or not Merritt's counsel failed to inform him about the intoxication

---

[1] The police report summarized Merritt's own statement made to the police in which he "readily admitted" stabbing the victim, described the knife he used to do it, and explained that he stabbed the victim because the victim and another person were "*getting the best of* [him and the codefendants] and they were really big." The report indicates that Merritt advised the police that he "was so bombed out on the six qualudes [*sic*] that he didn't even realize what was happening until he was stabbing the guy and stopped, looked at the knife in his hand and realized what he had done."

defense. We transferred that issue in part to the superior court for an evidentiary hearing and a determination on the merits.[2]

Pursuant to the Court of Appeals' transfer order, a hearing was held on December 14, 1990, to determine (1) whether Merritt's counsel had discussed the intoxication defense with him and, (2) if not, whether counsel's performance was deficient and whether there is a reasonable probability that Merritt would have changed his plea. Barnard and Merritt testified at the hearing.

Barnard testified that he had worked for the Eastside Defenders Association (EDA) from June 1978 until March 1983, had handled from 9 to 12 felony cases a month, and recalled having gone to trial on six murder cases. He could not recall Merritt or Merritt's case specifically and was unable to locate any files on the case. Barnard testified to his standard "practice habits as a criminal defense attorney" while he worked at EDA. The amount of contact would depend on the emotional needs of the client and the type of crime the client was charged with; a second degree murder case would have been one of the most serious matters in his caseload at the time. Ordinarily, he did not discuss the merits with a client until he received the police reports.

> My advice to the clients generally was that they had been charged with a particular offense; what the elements of the offense were; and I would tell the client basically what the prosecutor had to prove to make their case. I would advise the client that I did not want to hear their side of the story until I explained to them what the police reports said, what the prosecutor's side of the story was. I would describe for the defendant what was in the police reports. I generally did not give a copy of the reports to the defendant.

Barnard testified that he "tried to maintain pretty current understanding of the issues that were being presented in

---

[2]It is undisputed that prior to filing his PRP, Merritt was aware that the codefendant's convictions were reversed on appeal because the trial judge failed to instruct the jury on intoxication. *See State v. Rice*, 102 Wn.2d 120, 683 P.2d 199 (1984). Merritt admitted that he knew both codefendants pleaded guilty to amended charges of first degree manslaughter and received suspended sentences conditioned on terms of probation and 1 year of confinement with credit for time served.

criminal defense cases", and "tracked the advance sheets". He kept "relatively current on the issues that were being raised at that time by the defense."

In the light of his practice habits in 1981, Barnard testified that "it's very likely I would have discussed the issue of intoxication and its impact on Mr. Merritt's defense with him." After reviewing the prosecutor's sentencing recommendation, he testified that "the offer was not a compelling one, from Mr. Merritt's point of view. . . . [I]t doesn't seem that he was given a particularly attractive inducement to enter a plea."

Merritt testified that he had three brief meetings with Barnard prior to his plea. The first was a 5- or 10-minute meeting at the arraignment hearing. Merritt testified that Barnard said, " 'This is just an arraignment hearing, just plead not guilty,' " and "that was it and over with." The second meeting took place a week before the plea hearing and lasted less than 15 minutes. Merritt testified that Barnard said all the evidence pointed at Merritt and advised him to plead guilty. According to Merritt, he was never shown the police reports or the two witness statements. Merritt stated that Barnard's summary of the witness statements was that "all the evidence pointed to me", and that Barnard advised him to plead guilty because he had no hope of going to trial. He testified that the police report was not discussed at all, and, moreover, denied that he had ever made such statements to police. The third and final meeting took place just prior to the plea hearing and lasted 5 minutes. Barnard assisted him in writing the statement on the plea of guilty, had him sign it, and accompanied him into court. Although Merritt agreed that he had reviewed the statement on plea of guilty, he testified that no one had informed him that second degree murder had been charged alternatively with felony murder.

Merritt testified that although he explained to Barnard that he and his companions had been "pretty well bombed-out" on Quaaludes, he was never advised that intoxication could be used as a defense "or what the State would have

had to prove in the murder theory". He stated that had he been advised that he could request an intoxication instruction or otherwise use it as a defense, then he would not have entered the plea of guilty.

In his oral opinion, the trial judge acknowledged the "inherent flaws in making inferences from habit testimony or general practice testimony", and in "placing weight upon reconstructed memory testimony". Nonetheless, the court found by a preponderance of the evidence that a discussion of the possibility of asserting the defense of voluntary intoxication did take place. The court noted that, consistent with Barnard's standard practices, there

> would have been a full discussion of the possibilities for an intoxication defense in this case. The discussions of the intoxicated condition of Mr. Merritt were just too pervasive in all of this case, from the police reports on through the plea hearing; they obviously would have been a subject of discussion in the attorney-client conferences as well.

On the other hand, the court found Merritt's testimony to have "some clear weaknesses to it" and did not "find credible the representations by Mr. Merritt . . . that he was never made aware of the statements attributed to him by the police detectives."

As an alternative basis for its ruling, the court held that even assuming the issue had not been discussed, no prejudice would have resulted from such deficient representation because the plea would still have been entered. The court further noted that had the case been taken to trial, "in all likelihood, a conviction would have been entered on the charge of murder in the second degree on a felony murder theory."

Accordingly, the court entered findings of fact and conclusions of law and dismissed the portion of the personal restraint petition referred to it by the Court of Appeals. Merritt directly appeals the trial court's findings of fact and conclusions of law.

## II

The parties do not disagree about the applicable law and burden of proof. The central issue on appeal is whether

finding of fact 5, in which the court finds that defendant did discuss the intoxication defense with counsel, is supported by substantial evidence.[3]

Merritt contends that the trial court erred in finding that he had in fact discussed the intoxication defense with counsel.

■■ At a RAP 16.12 hearing on the merits of a personal restraint petition, the petitioner has the burden of establishing disputed facts by a preponderance of the evidence. *State v. Davis*, 25 Wn. App. 134, 138, 605 P.2d 359 (1980).[4] In conducting a merits hearing, it is the province of the trial judge to determine the weight and sufficiency of the evidence and to pass upon the credibility of witnesses. *See Davis*, at 138-39; RAP 16.12.

At the hearing, the only evidence presented by Merritt was his own testimony that he was never advised of the intoxication defense. The only evidence presented by the State was Barnard's testimony that, based on his standard habits and practices, as well as his legal knowledge, he in all likelihood did discuss the intoxication defense with Merritt. The trial judge did not find Merritt's testimony credible and instead concluded — based on Barnard's testimony, the commonplace use of the defense, and the circumstances of the plea — that, logically, the advice had been provided.

Because Merritt has not challenged the admissibility of Barnard's testimony under ER 406, the only issue on appeal is the relative weight to be given to Barnard's "habit and

---

[3]Preliminarily, the State challenges the adequacy of Merritt's assignments of error because he failed to specifically assign error to certain findings of fact. *See* RAP 10.3(g). However, it is clear from a review of Merritt's brief which findings of fact are being directly challenged. *See Heriot v. Smith*, 35 Wn. App. 496, 500, 668 P.2d 589 (1983) (court will overlook technical defect if it is clear from assignment which findings are challenged). There is thus an adequate basis to proceed to the merits of the appeal.

[4]We therefore note that the trial court need not have made the *affirmative* finding that the intoxication defense was in fact discussed. It would have sufficed for the trial court to have merely found that petitioner failed to prove by a preponderance of the evidence that the intoxication defense was not discussed.

practice" evidence. Merritt's argument suggests that the trial court was not entitled to give significant weight to Barnard's testimony. It is undisputed that Barnard had no recollection of the advice actually given and that Merritt's own testimony squarely contradicted Barnard's inference.

We decline to adopt any per se rule that habit evidence cannot constitute substantial evidence. As in all cases, in a RAP 16.12 superior court hearing, it is for the trier of fact to determine the credibility of the witnesses and the weight and sufficiency of the evidence, including evidence of habit and practice. *See Meyer v. United States*, 638 F.2d 155, 158 (10th Cir. 1980) ("[Habit evidence] does not stand in a special light nor is it to be referred to a second-class category which automatically carries little weight. If it is admissible, the weight to be given to it is dependent on the particular circumstances.") Here, the trial court properly considered Barnard's testimony in the light of the surrounding circumstances relating to Merritt's plea. Hence, even assuming Merritt's testimony was unaffected by credibility problems, it was well within the province of the trial court to conclude that Merritt's uncorroborated testimony was insufficient to meet his burden at a RAP 16.12 hearing of establishing the disputed fact by a preponderance of the evidence.

As there is no remaining basis for Merritt's claim of ineffective assistance, the trial court properly dismissed Merritt's petition. Because we affirm on this basis, we need not address the trial court's alternative rationale for dismissal, *i.e.*, that Merritt failed to demonstrate he was prejudiced by the alleged ineffective assistance.

Affirmed.

SCHOLFIELD and AGID, JJ., concur.