# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Personal )    No. 75296-1-I
Restraint of )
                                      )    DIVISION ONE
SERGIO GONZALES GUZMAN, )
                                      )    UNPUBLISHED OPINION
              Petitioner. )
                                      )    FILED: May 22, 2017

LEACH, J. — Sergio Gonzalez Guzman collaterally challenges his 2009 conviction for assault of a child in the first degree. He contends that his trial attorney provided him ineffective assistance by failing to seek public funding for a medical expert. Gonzalez Guzman has satisfied the first prong of his claim by showing that his counsel's performance was constitutionally deficient. But we do not have a sufficient record to resolve the second prong, whether this deficient representation prejudiced him. We remand to the trial court for a reference hearing to resolve the prejudice prong of his claim.

## FACTS

Sergio Gonzalez Guzman was taking care of his six-week-old son, D.G., the night of November 9, 2007. The next day, he discovered that D.G. would not wake up or eat and his eyes were rolling back in his head. D.G.'s mother took

him to Highline Hospital's emergency department.[1] Because of D.G.'s serious injuries, Highline had him transferred by helicopter to Harborview Medical Center.[2] Harborview later transferred him to Children's Hospital.

At Harborview, Gonzalez Guzman told a detective that he was carrying D.G. when he slipped and fell on the child with all his weight. Gonzalez Guzman said that D.G. seemed uninjured, so he put him to bed. The State eventually charged Gonzalez Guzman with first degree assault of a child.

At trial, seven doctors testified to the severity of D.G.'s injuries and the trauma required to inflict them.[3] Dr. Thomas Ryan saw D.G. at Highline and

---

[1] For clarity, the defendant is referred to by his last name, Gonzalez Guzman, and his wife and son are referred to as Crystal and D.G. Both parties spell the petitioner's name without a hyphen.

[2] In transit, medical staff made several attempts to insert a breathing tube into D.G.'s lungs before they succeeded. A treating physician at Children's described the procedure, "Intubation is putting a breathing tube down into the baby's lungs so that he can be breathed by a ventilator or by a bag."

[3] In rejecting Gonzalez Guzman's direct appeal, this court observed,
[T]he medical testimony refuted his allegation that D.G.'s injuries were accidental.
The question at trial was thus not the nature of D.G.'s injuries. Rather, the State offered so much evidence of the extent of great bodily harm that it negated Gonzalez-Guzman's accidental fall theory. The medical testimony established not only that the injuries were intentionally inflicted, but also that they were severe. One doctor described D.G.'s injuries as "devastating," the result of a "significant amount of force," and similar to trauma suffered by high speed interstate accident victims. Another testified that D.G.'s leg fracture "implie[d] sort of a torquing movement to break the bone," and that his broken rib is a "very, very difficult rib to break, so you have to squeeze very high up into the chest." Based on this evidence, the jury could not have misunderstood the link between recklessness and the harm that D.G. suffered.

-2-

testified that the baby had abnormal color, respiration, and movement, and bleeding in his brain. Ryan concluded that the injury was not accidental and the bleeding pattern was consistent with "shaken baby syndrome."[4]

Dr. Rebecca Wiester examined D.G. the day after he arrived at Harborview and a few days later at Children's. She said D.G. had a large skull fracture, several broken ribs, and a displaced spiral fracture of his tibia. He had hemorrhages in the back of his eyes and bleeding in his brain. A torqueing movement caused his spiral leg fracture. Wiester, an expert on child abuse, concluded that D.G.'s set of injuries was "highly consistent with inflicted trauma."

Dr. Robert Oxford also saw D.G. the day after he arrived at Harborview. He testified that D.G. had a "devastating brain injury" that would require a "significant amount of force," like that from a fall onto concrete from 8 to 10 feet or a car crash at 50 to 60 miles per hour.

Dr. Lincoln Smith also described D.G.'s severe brain injuries based on observing him at Children's on November 13. Smith testified that he would

---

State v. Gonzalez-Guzman, No. 65576-1-I, slip op. at 17-18 (Wash. Ct. App. Dec. 16, 2013) (unpublished), http://www.courts.wa.gov/opinion/pdf/655761.pdf (alteration in original).

[4] Experts continue to debate the causation of injury patterns that used to be widely termed "shaken baby syndrome." The term itself is no longer widely used. See In re Pers. Restraint of Fero, 192 Wn. App. 138, 157, 161, 367 P.3d 588 (2016), review granted, 187 Wn.2d 1024 (2017). Nonetheless, "[a]busive head trauma as a diagnosis, and shaking as a cause of such injuries, are generally accepted theories in the relevant scientific community." In re Pers. Restraint of Morris, 189 Wn. App. 484, 493, 355 P.3d 355 (2015).

presume a baby with D.G.'s combination of injuries had "shaken baby syndrome till proven otherwise."

D.G.'s condition worsened in the following months. The bleeding in his retinas made him blind, and the bleeding in his brain hindered his skull's growth. His cognitive and physical disabilities continued at least until the time of trial in 2009. The testifying doctors expected them to continue throughout his life.

The doctors who testified about seeing D.G. opined that his injuries probably resulted from intentionally inflicted trauma and were unlikely to result from an accidental fall.

Instead of challenging this medical testimony, Gonzalez Guzman's defense cast suspicion on D.G.'s mother. While the State called seven doctors and three other witnesses, Gonzalez Guzman's attorney, Ali Nakkour, called no witnesses.[5]

The jury found Gonzalez Guzman guilty. This court affirmed,[6] the Washington Supreme Court denied review,[7] and the United States Supreme Court denied certiorari.[8]

---

[5] Nakkour also declined to give an opening statement.
[6] Gonzalez-Guzman, No. 65576-1-I, slip op. at 22.
[7] State v. Gonzalez-Guzman, 181 Wn.2d 1002, 332 P.3d 984 (2014).
[8] Gonzalez-Guzman v. Washington, ___ U.S. ___, 135 S. Ct. 2899, 192 L. Ed. 2d 934 (2015).

Gonzalez Guzman has filed a habeas corpus petition in federal court.[9] Before he can pursue a claim of ineffective assistance of counsel in that case, he must first exhaust this claim in state court.[10] He has asked the federal court to stay his petition for habeas corpus while this court considers his personal restraint petition (PRP).

Gonzalez Guzman supports his PRP with a declaration from Nakkour about his representation. Nakkour stated that he was aware "that there was some controversy regarding the diagnosis of shaken baby syndrome." He believed that he needed a medical expert to defend his client adequately. He spoke with an expert in Southern California before trial and used that expert's suggestions and his own Internet research to cross-examine the State's experts at trial. The California expert never reviewed the record in Gonzalez Guzman's case. Nakkour intended to retain an expert to review the record, but he needed money to pay the expert. Gonzalez Guzman's wife told Nakkour she would get it but never did. Nakkour knew that public funding was available, but he did not request it.[11] By the time Nakkour realized Gonzalez Guzman's family would not supply the money for an expert, Nakkour thought it was too late to ask for public

---

[9] Gonzalez-Guzman v. Uttecht, No. C15-18670-RSL-JPD (W.D. Wash. 2015).

[10] Rose v. Lundy, 455 U.S. 509, 518-19, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

[11] See CrR 3.1(f); State v. Punsalan, 156 Wn.2d 875, 878-79, 133 P.3d 934 (2006).

funding or a continuance. Nakkour acknowledged that he should have requested public funding for a medical expert.

Gonzalez Guzman has also submitted a declaration from Dr. Steven Gabaeff, who reviewed some limited medical records. Gabaeff opined that D.G.'s injuries "were consistent with the father's version of events," that "low oxygen events" when D.G was under medical care caused the baby's worst injuries, and that at the time of Gonzalez Guzman's trial, medical testimony would have been available to support his version of events and rebut the State's experts.

## STANDARD OF REVIEW

To obtain collateral relief by a PRP, a defendant must show either an error of constitutional magnitude that gives rise to actual prejudice or a nonconstitutional error that "'inherently results in a complete miscarriage of justice.'"[12]

Claims of ineffective assistance present mixed questions of law and fact, which this court reviews de novo.[13] This court examines the entire record to decide whether the defendant received effective representation and a fair trial.[14]

---

[12] In re Pers. Restraint of Grantham, 168 Wn.2d 204, 212, 227 P.3d 285 (2010) (quoting In re Pers. Restraint of Isaddore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004)).
[13] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).
[14] State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008).

To succeed on an ineffective assistance claim, the defendant must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced him.[15]

This court has three options when reviewing a PRP: (1) dismiss the petition, (2) remand the petition for a full hearing on the merits or a reference hearing pursuant to RAP 16.11(a) and RAP 16.12, or (3) grant the petition without remanding for further hearing.[16] This court will order a reference hearing on an ineffective assistance claim after the defendant makes a prima facie showing on both the deficient performance and prejudice prongs.[17] This requires the defendant to allege the underlying facts of his claim and to present evidence supporting those allegations.[18] If the defendant does this, then the State must "'meet the petitioner's evidence with its own competent evidence.'"[19] If "'the parties' materials establish the existence of material disputed issues of fact,'" this

---

[15] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a defendant submitting a PRP meets his burden to show ineffective assistance under Strickland, then he has necessarily met his burden to show the actual and substantial prejudice the PRP standard requires. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

[16] In re Pers. Restraint of Monschke, 160 Wn. App. 479, 489, 251 P.3d 884 (2010); In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

[17] See In re Pers. Restraint of Rice, 118 Wn.2d 876, 889, 828 P.2d 1086 (1992).

[18] Yates, 177 Wn.2d at 18.

[19] Monschke, 160 Wn. App. at 489 (quoting Rice, 118 Wn.2d at 886).

court will order a reference hearing to resolve those issues.[20] This court will grant the petition without a reference hearing if the record convinces the court that the petition has merit.[21]

ANALYSIS

Gonzalez Guzman's petition demonstrates that his trial counsel was constitutionally deficient. But the court needs more facts to determine if this affected the outcome at trial. Because the record does not persuade this court of a reasonable probability that the outcome at trial would have been different with the expert testimony Gonzalez Guzman offers, we remand for a reference hearing on the prejudice issue.

Deficient Performance

This court approaches an ineffective assistance of counsel argument with a strong presumption that counsel provided effective representation.[22] A petitioner can "'rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'"[23] This court evaluates the

---

[20] Monschke, 160 Wn. App. at 489 (quoting Rice, 118 Wn.2d at 886).
[21] Rice, 118 Wn.2d at 885.
[22] In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).
[23] Davis, 152 Wn.2d at 673 (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)).

reasonableness of counsel's performance from "'counsel's perspective at the time of the alleged error and in light of all the circumstances.'"[24]

In general, "the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel."[25] But "depending on the nature of the charge and the issues presented, effective assistance of counsel may require the assistance of expert witnesses to test and evaluate the evidence against a defendant."[26]

In Hinton v. Alabama,[27] the United States Supreme Court held that an attorney's failure to replace a noncredible expert constituted deficient performance. The defense attorney presented testimony on a determinative issue from an expert whom the attorney knew would be unpersuasive.[28] The attorney did this under the false impression that Alabama law authorized no more than $1,000 for expert witness fees.[29] The Court reasoned that such strategic choices "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[30] The Court noted Hinton's attorney's ignorance about a point of law crucial to his case and his failure to

---

[24] Davis, 152 Wn.2d at 673 (quoting Kimmelman, 477 U.S. at 384).
[25] State v. Maurice, 79 Wn. App. 544, 552, 903 P.2d 514 (1995).
[26] State v. A.N.J., 168 Wn.2d 91, 112, 225 P.3d 956 (2010).
[27] ___ U.S. ___, 134 S. Ct. 1081, 1088, 188 L. Ed. 2d 1 (2014).
[28] Hinton, 134 S. Ct. at 1088.
[29] Hinton, 134 S. Ct. at 1088.
[30] Hinton, 134 S. Ct. at 1088.

perform basic research on it. It concluded that this was "a quintessential example of unreasonable performance under Strickland."[31] It thus remanded for a lower court to consider whether counsel's ineffective assistance prejudiced Hinton.

Here, the State concedes that Gonzalez Guzman's trial counsel's "strategy appears questionable" and that it is "troubling that trial counsel failed to hire an expert to review relevant medical records," but it contends that the court needs more facts to assess counsel's performance. We disagree.

The trial transcript and Nakkour's affidavit show that Nakkour presented no expert witnesses despite believing that he needed one.[32] Nakkour stated that he did consult a medical expert before trial and used the advice he received to cross-examine the State's experts. But the expert he consulted had not reviewed D.G.'s medical record or any other evidence in the case.

The State speculates that Nakkour could have based his decision not to have an expert testify on the advice of the expert he spoke to. It suggests the expert may have told Nakkour that a full medical review was unlikely to support Gonzalez Guzman's accident defense. Even if the State's speculation is true,

---

[31] Hinton, 134 S. Ct. at 1089 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[32] Trial motions show that a public defender who represented Gonzalez Guzman before Nakkour tried to obtain experts, but the record lacks any details on those efforts.

the expert could not offer Nakkour an adequately informed opinion without reviewing D.G.'s medical record. Nakkour knew he could obtain public funding to hire a consulting expert. The record thus shows that no "reasonable professional judgments support" the limits Nakkour put on his investigation.[33] Gonzalez Guzman's PRP satisfies the first ineffective assistance prong.

### Prejudice

To satisfy the second prong, the defendant must show a reasonable probability that the result of the trial would have been different without the attorney's deficient performance.[34] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[35]

The defendant must present specific evidence supporting allegations of prejudice.[36] "If the petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief," which may include affidavits or other corroborative evidence.[37] He cannot rely on bald assertions and conclusory allegations.[38] If a defendant makes a prima facie showing of actual prejudice but this court cannot determine the merits of the

---

[33] Hinton, 134 S. Ct. at 1088.
[34] Strickland, 466 U.S. at 694.
[35] Strickland, 466 U.S. at 694.
[36] Rice, 118 Wn.2d at 886.
[37] Rice, 118 Wn.2d at 886.
[38] Rice, 118 Wn.2d at 886.

claims from the record, this court will remand for a full hearing on the merits or for a reference hearing under RAP 16.11(a) and RAP 16.12.[39]

Here, we cannot find from the record a reasonable probability that a medical expert would have given the jury a reasonable doubt about Gonzalez Guzman's guilt.[40]

Gonzalez Guzman relies on a declaration from Dr. Steven Gabaeff to show how the lack of a defense expert prejudiced him. Gabaeff opined that D.G.'s injuries were consistent with a fall. The State asserts Gabaeff's declaration does not show prejudice because it "is riddled with errors[,] unsupported by citations to medical records or to trial testimony," and "simply too tenuous to support a finding of prejudice."

The State points to several factual errors. Some of these appear to be minor. For example, although Gabaeff stated that D.G.'s birth was premature, D.G. was actually born at 37 weeks, within the range of a full-term delivery. Gabaeff also misstated by a week D.G.'s age at the time of the incident. Gabaeff made more troubling errors. He made mistakes about major details of D.G.'s injuries. Most significantly, he stated that D.G.'s femur was broken, not his tibia. The injury to the tibia—a spiral fracture—was a key factor for several of the

---

[39] Rice, 118 Wn.2d at 885 (quoting In re Pers. Restraint of Hews, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

[40] See Hinton, 134 S. Ct. at 1089-90.

doctors who testified that D.G.'s injuries could not have been accidental. Gabaeff also stated that only one of D.G.'s ribs was broken when, in fact, several were. Dr. Smith testified that broken ribs are a significant sign of shaking.

The State also asserts that Gabaeff gave opinions outside of his medical expertise and showed bias. Gabaeff said that Gonzalez Guzman and Crystal's "past parenting behaviors [and] lack of any evidence of past abuse" showed that abuse was unlikely in their household. He also speculated repeatedly on the motives of medical providers who later testified. And he appeared to treat Gonzalez Guzman's version of events as fact while asserting that it should have influenced doctors' assessments of D.G.'s injuries.[41]

Gabaeff made only sporadic mention of items in D.G.'s medical history or other supporting documents. For example, he cited no basis for his assertion that Highline doctors or the air transport team caused D.G.'s skull fracture, other than the assertion—contradicted elsewhere in his declaration—that the fracture was not diagnosed until D.G. reached Harborview.[42]

---

[41] For instance, in recounting D.G.'s treatment, Gabaeff stated, "The fall, now reported and known to have occurred, is treated like it never happened."

[42] Elsewhere Gabaeff noted, "Initial evaluation at [Highline] reported skull fracture." The State points out a more likely explanation for any missed diagnosis: that the doctors at Highline were dealing with the more urgent problem that D.G. was not breathing.

Much of Gabaeff's declaration focuses on injuries that he said D.G. sustained while under medical supervision. The portions of testimony Gonzalez Guzman cites do not support his assertion that "prolonged lack of oxygen . . . likely caused many of DG's long-term injuries." Moreover, negligent

-13-

Although Gonzalez Guzman's petition satisfies the first ineffective assistance prong, we cannot grant it based on this record. Gabaeff's declaration at most creates a fact issue about whether, without Nakkour's alleged deficient performance, Gonzalez Guzman "would have hired an expert who would have instilled in the jury a reasonable doubt as to [Gonzalez Guzman]'s guilt."[43] It does not show a "reasonable probability" of this outcome. Such a finding would require this court to weigh Gabaeff's medical testimony against that of the doctors who testified at trial. The trial court is in the better position to decide the credibility of witnesses and weigh the evidence.[44] A reference hearing will allow this to happen.

The State asks this court to remand Gonzalez Guzman's petition to the same judge who presided at trial. RAP 16.12 states that when this court transfers a PRP to the superior court for a hearing, "[t]he hearing shall be held before a judge who was not involved in the challenged proceedings." But this

---

medical treatment would not negate Gonzalez Guzman's liability for an intentional act. See State v. Leech, 114 Wn.2d 700, 705, 790 P.2d 160 (1990) (holding arsonist proximately caused firefighter's death despite firefighter's possible negligence); State v. Perez-Cervantes, 141 Wn.2d 468, 488, 6 P.3d 1160 (2000) (Johnson, J., dissenting) ("'[M]ere negligence in medical treatment is not so abnormal that the defendant should be freed of liability'" (quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.12, at 408-09 (1986))).

[43] Hinton, 134 S. Ct. at 1089.

[44] See In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991); In re Pers. Restraint of Merritt, 69 Wn. App. 419, 424, 848 P.2d 1332 (1993).

court "may waive or alter the provisions of any [RAP] in order to serve the ends of justice."[45] And RAP 16.11(b) allows the chief judge of this court to enter "orders necessary to obtain a prompt determination of the petition on the merits." Because neither party assigns error to the trial judge's actions and Gonzalez Guzman does not oppose the State's request, we grant it.

## CONCLUSION

Gonzalez Guzman's PRP shows that his trial counsel provided constitutionally deficient representation by failing to consult an expert who had reviewed the medical record. But we cannot determine from the record that a reasonable probability exists that without this deficiency, the jury would not have reached a guilty verdict. We therefore remand to the trial court for a reference hearing on the prejudice prong of Gonzalez Guzman's ineffective assistance claim.

WE CONCUR:

---

[45] RAP 1.2(c).