# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Mater of the Personal Restraint of
DANIEL MILTENBERGER.

STATE OF WASHINGTON,

Respondent,

v.

DANIEL MILTENBERGER,

Appellant.

No. 87011-4-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Daniel Miltenberger appeals from the superior court's order denying his personal restraint petition following a reference hearing. Miltenberger asserts that the superior court erred by concluding that his attorney's failure to investigate a personal connection between him and one of the witnesses was not prejudicial. Because Miltenberger fails to demonstrate any error, we affirm the denial of his personal restraint petition.

I

We recite the following facts from Miltenberger's direct appeal:

> The State charged Daniel Jacob Miltenberger with one count of first degree rape and one count of first degree burglary with sexual motivation.
>
> At trial, the victim [C.S.] described an attacker entering her house and raping her at gunpoint. She also described the attacker's build, said he was wearing a striped long-sleeved shirt and a black mask, and testified that he had a splint and bandage on his arm. Snohomish County Sheriff's Office (SCSO) Detective Rich Emmons

testified that Miltenberger was wearing a cast when he initially contacted Miltenberger. He also testified that detectives searching Miltenberger's house after the incident found a striped shirt, a pellet gun, and a paintball gun.

Lisa Collins, a forensic scientist at the Washington State Patrol Crime Laboratory, testified to the results of the analysis of deoxyribonucleic acid (DNA) evidence taken from genital, anal, and oral samples. The main samples belonged to two donors. One donor was the man the victim was dating. Collins testified that it was highly probable that the other donor was Miltenberger.

State v. Miltenberger, No. 78126-0-I, slip op. at 1-2 (Wash. Ct. App. July 15, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/781260.pdf.

During the trial, the jury also heard testimony from Rebecca Allen, the sexual assault nurse examiner who performed the sexual assault examination on C.S. and collected the swabs that were later tested by Collins. During her direct examination, Allen provided factual testimony about the description C.S. gave of her attacker, the process she followed to collect the swabs from C.S., and the way she secured and packaged the swabs before turning them over to law enforcement for further DNA analysis by the crime lab. Allen did not know the identity of the attacker at the time of the examination, as C.S. did not know the identity of the attacker.

Shortly after the State charged Miltenberger, it provided discovery, including a possible witness list, to Miltenberger's attorney. Miltenberger reviewed the list and recognized Allen's name as the mother of his former roommate Katie Allen.[1]

---

[1] Because Katie shares a surname with her mother Rebecca Allen, we refer to her using her first name. We intend no disrespect.

During trial, shortly before Allen was scheduled to testify on direct examination, Miltenberger's attorney engaged in the following voir dire outside the presence of the jury:

| | |
|---|---|
| [Defense counsel]: | Do you see the folks sitting at counsel table here? |
| Allen: | Yes. |
| [Defense counsel]: | Do you know anybody at that counsel table? |
| Allen: | No. |
| [Defense counsel]: | You don't recognize anybody? |
| Allen: | No. |
| [Defense counsel]: | Do you have a daughter? |
| Allen: | Yes. |
| [Defense counsel]: | And what is your daughter's name? Is your daughter's name Katie? |
| Allen: | Yes. |

Later, also outside the presence of the jury, defense counsel asked Allen if she knew where Katie was living when she was in Everett. Allen indicated that she did not know where Katie lived at the time. Defense counsel explained to the court after Allen's voir dire testimony that he wanted to explore the possible connection between Allen and Miltenberger out of an abundance of caution but agreed with the court and the prosecutor that ultimately any testimony about Katie was not relevant and accordingly would not be presented to the jury.

The jury found Miltenberger guilty as charged. Id. at 3. Miltenberger appealed, and this court affirmed his convictions. Id. at 1. Miltenberger then filed a personal restraint petition arguing that he received ineffective assistance of counsel because his counsel failed to investigate and prepare to impeach Allen. This court transferred the case to Snohomish County Superior Court for a determination of the petition on the merits pursuant to RAP 16.12.

3

The superior court conducted a reference hearing, at which Miltenberger, defense counsel, Allen, Katie, detective Tyler Quick, and Miltenberger's former girlfriend Stephanie Gorla all testified. According to the testimony of multiple witnesses, on October 10, 2016, Miltenberger drove Katie to Walmart in Marysville to meet with Allen so that Allen could buy Katie a birthday gift. Allen recalled meeting a man with a cast on his arm, but did not remember his name or physical appearance, as she was more concerned with her daughter at the time. The entire encounter lasted approximately 20 minutes.

Miltenberger claimed that he exchanged phone numbers with Allen and later she texted him about Katie. Allen did not recall giving her number to Miltenberger, and a forensic examination of Miltenberger's phone did not show that he ever entered her number into his contacts or sent her a text message.

Miltenberger alleged that he informed defense counsel about his connection to Allen after viewing the witness list and asked defense counsel to look into it further. Gorla also testified that she asked defense counsel to look into the connection between Miltenberger and Allen well in advance of trial. Defense counsel could not remember what Miltenberger had told him and his file from the case was missing his notes.

The court did not address whether defense counsel's performance was deficient. Instead, the court determined that there was "no reasonable probability that a lack of investigation into whether . . . Allen knew Miltenberger prior to trial would have changed the jury's verdict." The court noted that evidence of any connection between Allen and Miltenberger would likely be inadmissible as

4

irrelevant. The court found that there was no evidence that Allen was biased against Miltenberger at the time she conducted the sexual assault examination, because neither she nor C.S. knew the identity of the attacker. The court also found that there was no evidence that Allen was biased against Miltenberger at the time of trial, because she neither knew nor recognized him. Finally, the court noted that the totality of the evidence against Miltenberger was overwhelming. Accordingly, the court concluded that Miltenberger failed to establish actual and substantial prejudice necessary to support a claim of ineffective assistance of counsel. Based upon its findings and conclusions, the trial court denied Miltenberger's personal restraint petition.

Miltenberger appeals.

II

To prevail on a personal restraint petition, the petitioner must establish either a constitutional error that resulted in actual and substantial prejudice or a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. In re Pers. Restraint of Meredith, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Establishing "actual and substantial prejudice" means more than merely showing a possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. In re Pers. Restraint of Meippen, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

Miltenberger asserts that he was denied effective assistance of counsel when defense counsel failed to investigate the connection between Miltenberger

and Allen. The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a petitioner must show both that defense counsel's performance was deficient and that the deficient performance was prejudicial. State v. Hassan, 151 Wn. App. 209, 216-17, 211 P.3d 441 (2009) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to establish either requirement will defeat a claim of ineffective assistance. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

In this case, the trial court declined to decide whether defense counsel's performance was deficient and instead focused on whether Miltenberger had made the necessary showing of prejudice. "At a RAP 16.12 hearing on the merits of a personal restraint petition, the petitioner has the burden of establishing disputed facts by a preponderance of the evidence." In re Pers. Restraint of Merritt, 69 Wn. App. 419, 424, 848 P.2d 1332 (1993) (citing State v. Davis, 25 Wn. App. 134, 138, 605 P.2d 359 (1980)). To demonstrate that counsel's performance was prejudicial, "the defendant must establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Miltenberger asserts that there was a reasonable probability that the outcome would have been different had defense counsel investigated the connection between Miltenberger and Allen prior to trial. Miltenberger reasons that it was ineffective assistance for his counsel not to bring out at trial the facts of Miltenberger's relationship with Katie that he argues made Allen biased against him. Miltenberger claims that Allen was biased because "I damaged her daughter." He asserts defense counsel should have elicited testimony from Allen to that effect, introducing evidence of the "damage" Miltenberger did to Katie. In Miltenberger's own words,

> I pushed [Katie] into a lot of stuff she didn't want to do, and stuff that I don't even like to admit, because I'm trying to better myself. To bring the demons up, I was—she prostituted herself to make money. She sold drugs for me. She ran drugs for me. She did whatever I told her to do. A lot of crimes she—the reason she ended up going to prison is because I put her into that lifestyle.

Miltenberger asserts that had he investigated earlier, defense counsel would have "reveal[ed] to jurors that Allen actually knew him, had reason to resent him, and possibly preferred him convicted," and that jurors might have rejected Allen's testimony on that basis.

However, the trial court's unchallenged findings support its conclusion that Miltenberger suffered no prejudice from his counsel's performance because Allen never recognized Miltenberger (and thus knew he was the person that Katie had been staying with). As his counsel conceded below, "it's a difficult argument" to claim that Allen was biased when she performed the sexual assault examination, because she had no knowledge of the identity of C.S.'s attacker. Miltenberger

appears to recognize this and instead argues that Allen was biased against him at the time of trial.

The record does not support Miltenberger's argument. As Allen testified and the trial court found, Allen did not recognize Miltenberger at the time of trial. Allen also did not remember Miltenberger's name or anything else about him other than the fact that he was wearing a cast on his arm when she met him.[2] Additionally, Allen's testimony at trial was limited to the information C.S. provided to her and the steps she took when performing the sexual assault investigation. Even if defense counsel had investigated the connection between Miltenberger and Allen earlier, nothing on the record demonstrates that Allen would have testified any differently or had any bias toward Miltenberger that could have affected the trial.

In sum, Miltenberger fails to identify any evidence presented at the reference hearing demonstrating that there was any probability that the outcome of proceedings would have been different had defense counsel investigated the connection between Miltenberger and Allen earlier.

Miltenberger does not demonstrate that the trial court's conclusion that he failed to demonstrate prejudice necessary to support a claim of ineffective

---

[2] Although Miltenberger assigned error to the trial court's finding, the only discussion of it in his brief is his speculation that Allen could have remembered his name when she received the subpoena for trial. We do not address assignments of error that are not supported by argument and citations to authority. Rhinehart v. Seattle Times, 59 Wn. App. 332, 336, 798 P.2d 1155 (1990).

8

assistance was incorrect. Accordingly, the trial court did not err by denying Miltenberger's personal restraint petition.

Affirmed.

Birk, J.

WE CONCUR:

Feldman, J.        Coburn, J.